**Jerry W. BROWN, Appellant–Defendant,**

v.

**STATE OF INDIANA, Appellee–Plaintiff.**

No. 25A03–0402–CR–85.

Court of Appeals of Indiana.

April 26, 2005.

Transfer Denied July 13, 2005.

Jerry W. Brown, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Jerry W. Brown appeals his convictions of Robbery Resulting in Bodily Injury,[1] a class B felony, and Battery Resulting in Bodily Injury,[2] a class A misdemeanor, as well as his adjudication as a habitual offender.[3] He presents several issues for review, of which we find the following issue dispositive: Was Brown denied his right to a speedy trial pursuant to Indiana Criminal Rule 4(B) and, thus, entitled to discharge?

We reverse and remand.

After midnight on August 19, 2001, Brown entered John Tintsman's mobile home in Fulton, Indiana, while Tintsman was asleep on the couch. Before arriving at his friend's home, Brown had been thrown out of a bar in a neighboring county following an altercation. He was agitated and upset and decided to obtain a gun and then return to the bar to confront the patron with whom he had argued. He went directly to Tintsman's because he knew Tintsman had a gun.

Once inside the trailer, Brown spoke with Tintsman and asked him for the gun. Tintsman refused. Upset with this response, Brown struck Tintsman multiple times in the face, causing injury. Tintsman eventually stated the gun was outside in his camper and the two went to the camper. Tintsman's wife, who was sleeping in the camper, told them the gun was in its usual place inside the trailer. Brown pushed Tintsman back into the trailer and retrieved the gun. He then left with the loaded gun and returned to the bar and confronted the patron. Someone at the bar subdued Brown and recovered the gun. Police were called to the scene, where Brown was arrested in Marshall County for his actions at the bar. Later that day, Tintsman went to the Fulton County Sheriff's Department and filed a report against Brown.

On October 3, 2001, the State charged Brown with robbery resulting in serious bodily injury, a class A felony, and battery causing serious bodily injury, a class C felony. These charges arose out of his actions at Tintsman's home in Fulton County. The State also filed an information for determination of habitual offender status. The following day, the Fulton Superior Court found probable cause and issued a warrant for Brown's arrest.

On March 5, 2002, after learning of the pending charges in Fulton County, Brown filed a pro se Request for Speedy Trial and noted he was currently incarcerated in the Marshall County Jail.[4] The trial court issued the following order on April 1, 2002:

> This matter is before the Court on the Defendant's Request for Speedy Trial.
>
> The Court notes he is currently incarcerated in the Marshall County Jail on unrelated charges or conviction.
>
> The record, in this matter, shows charges were filed on October 3, 2001;

---

1. Ind.Code Ann. § 35–42–5–1 (West 2004).

2. I.C. § 35–42–2–1(a)(1)(A) (West 2004).

3. Ind.Code Ann. § 35–50–2–8 (West 2004).

4. Though not entirely clear from the record, it seems likely that Brown learned of the pending charges in Fulton County during the sentencing phase in Marshall County. Further, his incarceration in Marshall County appears to have arisen out of the incident at the bar.

probable cause determined on October 4, 2001; and a warrant issued to the Fulton County Sheriff on October 4, 2001.

At the time of the filing of the Defendant's Request for Speedy Trial, there is no record of the Fulton County warrant being served on the defendant.

Based on the information before the Court at this time, the State is given ten (10) days to respond to the Defendant's request for a Speedy Trial.

*Appellant's Appendix* at 274. The order, which was mailed to Brown at the Marshall County Jail, was returned to sender on April 8, with a handwritten notation on the envelope: "Inmate is @ DOC unk location". *Id.* at 685. The State failed to respond to Brown's request for a speedy trial.

The arrest warrant was not served on Brown at the Department of Correction until July 3, 2002, just before Brown completed his sentence for the Marshall County conviction. On July 9, 2002, the trial court held an initial hearing. Brown appeared in person and requested a public defender. C. Richard Oren entered an appearance on behalf of Brown on August 1. The parties appeared by counsel on August 7, and the pretrial conference was reset for September 11.

Despite being represented by counsel, Brown filed a flurry of pro se letters/motions with the trial court beginning in late August. Of particular note, on September 10, the day before the pretrial conference, Brown filed an "Objection" and noted his dissatisfaction with his public defender, Oren. Brown indicated he had instructed Oren to withdraw as counsel.[5] That same day, Brown also filed a pro se Request for Change of Judge.

On September 11, the parties appeared by counsel and the cause was set for a two-day jury trial to commence in February 2003. On September 16, the trial court scheduled a hearing for October 17 regarding Brown's requests for change of judge and change of attorney. In the interim, Brown filed multiple motions to dismiss alleging a double jeopardy violation, a speedy trial violation, malicious prosecution, and a violation of his Sixth Amendment right to a fair trial. The trial court set these motions for hearing on October 17.

At the October 17 hearing, Oren moved to withdraw as counsel, and Brown indicated he wanted another attorney. In light of the deterioration of the attorney-client relationship, the court allowed Oren to withdraw and ordered the appointment of a new public defender. Brown then withdrew his request for change of judge and indicated he would like to wait on his motions to dismiss to allow his new attorney to consider them.

Joseph Simanski entered his appearance as a public defender for Brown on October 30, 2002. Thereafter, on January 2, 2003, Brown, by counsel, filed a motion to discharge and supporting memorandum, alleging a violation of Criminal Rule 4(B). At the hearing on the motion, the State acknowledged that if Brown's speedy trial motion was effective when filed, "then clearly that's the end of the story". *Hearing Transcript* at 38. The State argued, however, that the speedy trial motion was filed prematurely, at a time when Brown

---

5. He stated his objection as follows:
 Defendant objects to any motions Mr. Oren may have filed to help forfiet [sic] any grounds in the case that warrant dismissal! Any motions filed was [sic] done without defendants [sic] knowledge or authorization, as Mr. Oren was merely acting as a puppet for the Prosecutor to uncover defenses of the defendants [sic].
 *Id.* at 650.

was being held for a conviction in Marshall County and had not yet been arrested on the instant charges. The State explained:

> I would, I agree we knew he was in Marshall County at some point. Uh, I know that only because I was surprised to find out he was at the Department of Corrections. I thought that they had a hold on him in Marshall County and that we would pick him up from Marshall County when they were done with him and then we find out he's at the DOC. I still don't know exactly how that happened. I don't know that it matters, but um, he was in another county being held on another charge and ultimately sentenced on that charge. He was never held on our charge.

*Id.* at 35. Following the hearing, the trial court took the matter under advisement and later denied the motion.

Brown's two-day jury trial commenced on July 30, 2003. The jury ultimately convicted Brown of lesser-included offenses, as set forth above, and found him to be a habitual offender. Brown received an aggregate sentence of fifty years in prison. He now appeals.

Brown challenges the trial court's denial of his motion to discharge. As set forth above, while detained on an unrelated charge/conviction in the Marshall County Jail, Brown requested a speedy trial for pending charges in Fulton County. At the time of his request, charges had been filed and an arrest warrant had been issued, but he had not yet been arrested for the pending charges. He claims the speedy-trial clock began running upon his request.

 In the instant case, the issue is whether Brown's pro se speedy trial motion, made prior to his arrest, triggered the time limits of Criminal Rule 4(B). If it did, then Brown is entitled to discharge. We review this matter de novo. *See Jenkins v. State,* 809 N.E.2d 361 (Ind.Ct.App. 2004), *trans. denied.*

When a defendant moves for a speedy trial, he invokes the procedures and deadlines of Criminal Rule 4(B)(1), which provides in relevant part as follows:

> Defendant in Jail—Motion for Early Trial. If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. . . .

The clear purpose of this rule is to prevent a defendant from being detained in jail for more than seventy days after requesting an early trial. *Poore v. State,* 685 N.E.2d 36 (Ind.1997). Our supreme court, however, has explained that restraint on liberty is not the only policy underlying Rule 4(B):

> There is also the anxiety and humiliation that can accompany public accusation. These considerations are unrelated to whether the accused is incarcerated on other grounds at the time the speedy trial is demanded. Equally importantly, a prompt trial enables a defendant to make his or her case before exculpatory evidence vanishes or becomes stale. The Court of Appeals majority concluded that the difficulties caused by the passage of time can only benefit the defendant by making the State's proof more difficult. That is likely true in most cases, but one can imagine scenarios where, for example, mistaken identity or alibi are in issue and the dimming of memories operates to the defendant's disadvantage.

*Id.* at 40 (citation omitted).

In *Poore,* our supreme court cited with approval a line of cases indicating that

Rule 4(B) is available to a defendant incarcerated on another charge and within the exclusive custody of the State of Indiana. *Poore v. State,* 685 N.E.2d 36. Of particular note, the Court observed it had "recently implicitly reaffirmed this aspect of Rule 4(B)" in *Jackson v. State,* 663 N.E.2d 766 (Ind.1996). *Poore v. State,* 685 N.E.2d at 40. The initial chronology of events in *Jackson* as set forth by the Court follow in relevant part:

> The following is a chronology of events relevant in this case. (At all times relevant here, Jackson was incarcerated by the Indiana Department of Corrections serving a sentence on unrelated charges):
>
> February 3, 1993: The State issues an information charging Jackson with Class B burglary and with being an habitual offender.
>
> January 18, 1994: Jackson files, pro se, his Crim. Rule 4(B) Motion for a Speedy Trial with the Allen County Superior Court Clerk's office and certifies service on the Allen County Prosecutor's office.
>
> January 28, 1994: Defendant Jackson appears, pro se, at an initial hearing. At this hearing, a pre-trial hearing was scheduled for February 11, 1994 to allow Jackson's counsel to enter an appearance. Jackson later testifies that, at this initial hearing, the judge conducting the hearing was aware of his request for a speedy trial. At this initial hearing, an omnibus date of March 28, 1994 was established.
>
> February 11, 1994: Jackson's trial counsel enters his appearance.

*Jackson v. State,* 663 N.E.2d at 768. There is no indication that Jackson had been arrested on the pending charges prior to filing his motion for a speedy trial, yet the Court considered the date said motion was filed as the start of the speedy-trial clock. Because Jackson was not tried within seventy days of his motion, the Court set aside his convictions.

■ In the instant case, the State had filed charges against Brown and an arrest warrant had been issued. Moreover, there is indication in the record that the Fulton County prosecutor was aware of Brown's incarceration in an adjoining county, had communicated with officials in Marshall County regarding the pending charges, and had at least attempted to place a hold on Brown. Despite Brown's request for a speedy trial, the State did *nothing,* apparently deciding to wait until Marshall County "was done with him".[6] *Hearing Transcript* at 35. This was not proper in light of Brown's request for a speedy trial. At all relevant times, Brown was within the exclusive custody of the State.[7] Therefore, he was entitled to invoke his right to a speedy trial under Rule 4(B) with regard to the pending charges, and the clock started running when his request was filed. *See Poore v. State,* 685 N.E.2d 36; *Jackson v. State,* 663 N.E.2d 766.

■ While Brown may not have taken positive steps beyond filing his motion to protect his right to a speedy trial, his

---

**6.** The State never argued it had not been served with notice of Brown's request for a speedy trial.

**7.** When a defendant is incarcerated in another jurisdiction, Rule 4(B) is not applicable due to concerns of certainty and ease of administration of the rule. *See State v. Laslie,* 178 Ind.App. 107, 381 N.E.2d 529 (1978) (citing *Smith v. State,* 267 Ind. 167, 368 N.E.2d 1154 (1977)). This is not so when an accused is within the exclusive custody of the State, because "[u]ncertainties are not present when the State has ready access to the accused and bringing him to trial will have no deleterious effect on the State administration of justice." *Id.* at 532.

failure to mount a more aggressive campaign hardly vitiates his right to a speedy trial. *See Jackson v. State,* 663 N.E.2d 766. "The onus is on the State, not the defendant, to expedite prosecution." *Id.* at 769 (a defendant has no duty to bring himself to trial). Because he was not brought to trial within seventy days of his request for a speedy trial,[8] and the delay is not attributable to Brown or to a congested court calendar, Rule 4(B) requires that Brown be discharged. *See Jackson v. State,* 663 N.E.2d 766. We, therefore, remand this cause to the trial court with instructions to grant Brown's motion to discharge.

Judgment reversed and remanded.

BAKER, J., and SHARPNACK, J., concur.

---

8. The seventieth day was May 14, 2000, well before his arrest and initial hearing.