**Mark A. HOWARD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 10A01–0011–CR–395.**

Court of Appeals of Indiana.

Sept. 19, 2001.

ered to Aegean. *Id.*

Jeffrey D. Stonebraker, Jeffersonville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Mark A. Howard challenges his conviction for Battery, a Class A misdemeanor,[1] on two separate grounds. First, he alleges

---

1. Ind.Code § 35–42–2–1(1).

that the trial court erred in denying his Motion for Discharge because 659 days elapsed between the filing of the charges against him and the date of his trial. Second, Howard asserts that the trial court also erred in refusing to give his tendered instruction on self-defense. Because we find that the trial court properly denied Howard's Motion for Discharge and Howard's testimony did not support the giving of an instruction on self-defense, we affirm.

### Facts and Procedural History

On September 2, 1998, Howard went to the home of Karen L. Zinser to retrieve some of his personal belongings and to return a cellular phone that belonged to Zinser. Howard and Zinser had previously lived together in the residence, along with Zinser's daughter, Candace Corrigan and Corrigan's daughter. When Howard arrived at the residence, all of his belongings were awaiting him outside of the home. He loaded his belongings into his car, but not wanting to leave the cellular phone outside where it could be stolen or damaged, he proceeded to knock on the door. Eventually, Corrigan opened the door, left it ajar, and walked away from the entrance. Howard took this to be an invitation into the home. Further, Howard testified that there was no objection made to his entry.

Additionally, Howard offered testimony that Corrigan initiated the physical altercation that formed the basis of his arrest and conviction for battery after the two of them exchanged words. Specifically, Howard alleged that Corrigan slapped him in the face with her open hand. Thereafter, Howard lost his temper and pushed Corri-gan onto the couch and restrained Corrigan. After he released her, Howard claims that Corrigan slipped and fell into a glass coffee table, which resulted in her suffering a laceration to the head, as she headed into the kitchen area. Howard admits that he followed Corrigan into the kitchen, where he again restrained her after she reached for a knife. Meanwhile, Zinser phoned 9-1-1. Howard then released Corrigan and left the residence. We note that Corrigan, however, testified to a very different rendition of events.[2]

Howard was arrested shortly after leaving the Zinser residence. He posted bond and was released the following day. On September 9, 1998, the State filed formal criminal charges against Howard for residential entry and battery. Although Howard failed to appear at his initial appearance on September 15, 1998, counsel appeared on his behalf and informed the trial court that Howard was in the custody of the Kentucky authorities. The trial court issued a warrant for Howard's failure to appear.

On July 23, 1999, the State lodged a detainer based on its charges against Howard. The Kentucky authorities released Howard in September 1999. On September 3, 1999, Howard voluntarily appeared for an initial hearing in exchange for the State's promise to withdraw the detainer and warrant pending against him. Additionally, Howard appeared for pretrial conferences on November 10, 1999, February 3, 2000, and May 5, 2000. Both the November and February pretrial conferences resulted in continuances, while at the May

---

2. For purposes of deciding the issues for our review, it is not necessary to present both versions of the events. Our cases support the proposition that if a scintilla of evidence is presented that would take a case into a self-defense posture, even if the defendant's testimony is the sole source of such evidence and such testimony is weak and inconsistent, the trial court should instruct the jury on self-defense. *Creager v. State*, 737 N.E.2d 771, 777 (Ind.Ct.App.2000), *trans. denied; Bragg v. State*, 695 N.E.2d 179, 180 (Ind.Ct.App.1998); *Dayhuff v. State*, 545 N.E.2d 1100, 1102 (Ind. Ct.App.1989), *trans. denied.*

pretrial conference Howard's case was set for trial on June 29, 2000.

Prior to his June 29 trial and again during trial, Howard moved the trial court for a discharge. The trial court denied Howard's motion on both occasions. Howard's case was tried to a jury. Howard defended against the charges by claiming self-defense. However, the trial court refused to instruct the jury on self-defense. The jury convicted Howard of Battery, a Class A misdemeanor. This appeal ensued.

### Discussion and Decision

#### I. Motion for Discharge

■ Indiana Criminal Rule 4 provides for the discharge of defendants when the State delays in bringing a defendant to trial. In essence, Criminal Rule 4 is Indiana's codification of a defendant's speedy trial rights. Criminal Rule 4(C) provides the basis for Howard's appeal. Specifically, Criminal Rule 4(C) reads:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Any defendant so held shall, on motion, be discharged.

Ind.Crim. Rule 4. However, Indiana has long held that Criminal Rule 4 does not apply when a person is incarcerated in a foreign jurisdiction. *Brown v. State,* 497 N.E.2d 1049, 1050 (Ind.1986); *Heflin v. State,* 275 Ind. 197, 416 N.E.2d 121, 124 (1981); *Smith v. State,* 267 Ind. 167, 368 N.E.2d 1154, 1156 (1977); *cf. Sweeney v. State,* 704 N.E.2d 86, 100 (Ind.1998), *cert. denied* 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999) (recognizing a limited exception to this general rule when the defendant is brought into Indiana under a Writ or other form of temporary custody, yet the State voluntarily relinquishes custody to another jurisdiction before bringing the defendant to trial). In fact, our supreme court in *Smith* declared:

> While it may be reasonable to impose the time limit of Criminal Rule 4 ... when a criminal defendant is within the exclusive control of the State of Indiana, for purposes of certainty and ease of administration of the rule, it becomes irrational to extend its application to a defendant who is incarcerated in another jurisdiction which has an interest in retaining the defendant in its custody, either for trial or to serve a sentence.

*Smith,* 368 N.E.2d at 1156. Thus, in cases involving the speedy trial rights of defendants incarcerated in foreign jurisdictions we apply the Interstate Agreement on Detainers (IAD)[3] rather than Indiana Criminal Rule 4. *Brown,* 497 N.E.2d at 1050.

■ The IAD is designed to secure a speedy trial for prisoners who are already incarcerated in one state and have outstanding charges against them in other states. *Pallett v. State,* 269 Ind. 396, 381 N.E.2d 452, 455 (1978). Consequently, the IAD applies only to persons who have already been convicted and are serving time in prison, not those awaiting trial and sentencing. *Id.* Article 3(a) of the IAD provides:

---

**3.** Ind.Code § 35–33–10–4.

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after *he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint....*

Ind.Code § 35–33–10–4 (emphasis added). The instant case presents an interesting interplay between Criminal Rule 4 and the IAD for analysis.

Howard was arrested on September 2, 1998. The State filed formal criminal charges against him on September 9, 1998. Therefore, for purposes of Criminal Rule 4, the clock began to tick on September 9, 1998. At his initial hearing on September 15, 1998, counsel for Howard informed the State that Howard was incarcerated in Kentucky. At this point, Howard was not in the exclusive control of the State of Indiana. As a result, we find that Criminal Rule 4 was inapplicable for Howard's period of incarceration in Kentucky. *Smith*, 368 N.E.2d at 1156.

■ On July 23, 1999, the State lodged a detainer against Howard under the IAD for the charges pending against him in Indiana.[4] Howard, however, never requested a final disposition of those charges. We find that the 180 day period in which a defendant must be brought to trial under the IAD was never triggered.

■ Finally, of significance is the date on which Howard returned to Indiana, September 3, 1999. Because we conclude that Howard was within Indiana's exclusive control at this time, we apply Criminal Rule 4. Howard's trial took place on June 29, 2000, 300 days after his return to Indiana. Accordingly, we find that the State afforded Howard a trial on his charges within the one year time limitation of Criminal Rule 4(C) and the trial court did not err in denying Howard's Motion for Discharge.

Howard contends that *Sweeney* dictates a different result. In particular, Howard asserts that *Sweeney* requires the ten month delay between his informing the State of his whereabouts in Kentucky and the State lodging a detainer should be charged to the State under Criminal Rule 4(C). However, we find that Howard misinterprets *Sweeney*.

Our supreme court merely carved out a very limited exception to the *Smith* line of cases in *Sweeney*, thereby leaving intact its earlier decisions in *Smith*, *Heflin*, and *Brown*. Specifically, our supreme court concluded that while generally Criminal Rule 4 will not apply to defendants incarcerated in foreign jurisdictions, it is proper to apply Criminal Rule 4 to such defendants in the single instance where the State brings a defendant into Indiana under a form of temporary custody, but then voluntarily relinquishes control of that defendant to a foreign jurisdiction. *Sweeney*, 704 N.E.2d at 100. Such was not the

---

4. Howard argues that the State had a duty to lodge a detainer against him before July 23, 1999, or, in the alternative, seek his extradition. Howard fails, however, to make a cogent argument and to cite adequate facts and authority supporting his proposition that the State had such a duty. Thus, we find that this argument is waived. Ind. Appellate Rule 46(A)(8)(a); *Garmene v. LeMasters*, 743 N.E.2d 782, 786 (Ind.Ct.App.2001).

situation in Howard's case. Thus, we follow the *Smith* line of cases and affirm the trial court's decision to deny Howard's Motion for Discharge.

### II. Jury Instruction on Self–Defense

■■■■ Next, Howard contends that the trial court erred in refusing to instruct the jury on self-defense. The giving of jury instructions is a matter within the sound discretion of the trial court, and we review the trial court's refusal to give a tendered instruction for an abuse of that discretion. *Creager v. State*, 737 N.E.2d 771, 776 (Ind. Ct.App.2000), *trans. denied.* Generally, we will reverse a trial court for failure to give a tendered instruction if: (1) the instruction is a correct statement of the law; (2) it is supported by the evidence; (3) it does not repeat material adequately covered by other instructions; and (4) the substantial rights of the tendering party would be prejudiced by failure to give.it. *Id.*

■■■■ Moreover, we note that a defendant in a criminal case is entitled to have the jury instructed on any theory of defense that has some foundation in the evidence. *Id.* at 777. We apply this rule even if the evidence is weak and inconsistent so long as the evidence presented at trial has some probative value to support it. *Id.* Further, we recognize it is within the province of the jury to determine whether the defendant's evidence was believable, unbelievable, or sufficient to warrant the use of force. *Id.*

Additionally, our supreme court set forth three factors that a defendant must prove to support his claim for self-defense: (1) that he was in a place where he had a right to be; (2) that he acted without fault; and (3) that he has a reasonable fear or apprehension of death or great bodily harm. *Miller v. State*, 720 N.E.2d 696, 700 (Ind.1999).

Howard tendered the following instruction, which the trial court refused to give:

The defense of self-defense is defined by law (IC 35–41–3–2) as follows:

A person is justified in using reasonable force against another person to protect himself from what he reasonably believes to be the imminent use of unlawful force. No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting himself by reasonable means necessary.

Notwithstanding the above paragraph, a person is not justified in using force if:

1. he is committing, or is escaping after the commission [of,] a crime;

2. he provokes unlawful action by another person with intent to cause bodily injury to the other person; or

3. he has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of disproving this defense beyond a reasonable doubt.

Tr. P.77. No other self-defense instruction was tendered to or given by the trial court.

The trial court, in refusing to give Howard's instruction, noted:

In analyzing the testimony of the defendant, the court, after due consideration, reached the conclusion that a self-defense instruction was not justified in these circumstances as Mr. Howard testified to the best of my recollection that the conduct which might constitute a battery by him ... occurred after Ms. Corrigan turned away from him and was proceeding to the couch. As a result of

that, which was not expected but was the testimony, the court deleted instruction 13 which would have been the self-defense instruction.

Tr. P. 333.

During his direct examination, Howard testified as follows:

Q: Okay. Well, what happened after you all exchanged words?

A: Miss Corrigan had turned around and smacked me in the face.

Q: Okay. With—with her fist, with what?

A: Opened hand.

\* \* \*

Q: After she did that did she just turn around and walk away?

A: No, after she had did that my temper then hit me. I overreacted and I grabbed Miss Corrigan by the shirt and pushed Miss Corrigan on the couch.

Tr. P. 315–16. Later in his testimony, Howard explained the incident further by stating:

Q: Okay. She's smacked you and before you have a chance to stop her what is she doing?

A: I believe at that time she had turned around and started walking towards the couch.

Q: Okay. And what did she do at that point?

A: At that point that's when—before she turned all the way around that's when I grabbed her by the shirt up on the top of her sleeves and then that's when I pushed her on the couch.

Tr. P. 323–24.

 Even though only a scintilla of evidence is necessary to support the giving of a self-defense instruction, our review of

Howard's testimony reveals that Howard failed to establish a sufficient basis for a self-defense instruction. In particular, Howard offered no testimony that he was in fear of bodily harm when he first struck the victim. Further, Howard directly contradicts his theory of self-defense by his testimony that he grabbed Corrigan after she has started to turn around and walk away. As such, we conclude that the trial court did not err in refusing to instruct the jury regarding self-defense.

Judgment affirmed.

DARDEN, J., and MATHIAS, J., concur.