Alphonzo FISHER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 10A01–1001–CR–21.

Court of Appeals of Indiana.

Aug. 30, 2010.

Bart M. Betteau, Betteau Law Office, LLC, New Albany, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Henry A. Flores, Jr., Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

In this interlocutory appeal, Alphonzo Fisher challenges the trial court's denial of his motion to discharge. Fisher presents

two issues, which we consolidate and restate as: Did the trial court improperly deny his motion to discharge?

We reverse.

On June 19, 2001, Fisher was charged with two counts of class A felony dealing in cocaine. An initial hearing at which Fisher appeared was held on June 21, 2001. A final pre-trial hearing was initially set for September 13 with a jury trial to follow on October 23, 2001. Upon Fisher's motion, the final pre-trial hearing and jury trial were continued. The court reset the final pre-trial hearing for December 6, 2001, with the jury trial to follow on January 15, 2002. At the December 6 hearing, Fisher's counsel appeared and advised the court that Fisher was in federal custody in an unrelated case. The court reset the jury trial for April 16, 2002, with a final pre-trial conference set for March 14, 2002. Due to being in federal custody, Fisher failed to appear for the final pre-trial conference held on March 14. The court issued a bench warrant for Fisher's failure to appear.

On July 25, 2006, the next entry on the chronological case summary (CCS), Fisher, by counsel, filed a notice of availability for prosecution and an objection to the delay in prosecution. The next entry on the CCS is for December 3, 2007, on which date Fisher filed a motion to discharge contending that his constitutional and statutory speedy trial rights had been violated. The court held a hearing on Fisher's motion on February 11, 2008, and thereafter took the matter under advisement. On March 4, 2008, the trial court entered an order denying Fisher's motion to discharge. Fisher pursued an interlocutory appeal, which was denied by this court.

Thereafter, on November 3, 2008, the trial court reset a final pre-trial conference for December 4, 2008. In anticipation of the hearing, Fisher filed a motion for transport, which the trial court granted. On November 21, 2008, the State filed an objection to the transport order, arguing that any transportation would violate the Interstate Agreement on Detainers (IAD) (*see* Ind.Code Ann. § 35–33–10–4 (West, Westlaw through 2010 2nd Regular Sess.)) because the necessary paperwork had not been completed and that Fisher could not be transported until he finished serving his federal sentence. On its own motion, the court stayed the transport order and scheduled the matter to be heard at the final pre-trial conference. On December 4, 2008, Fisher filed an objection to the trial court holding a final pre-trial conference in his absence and again demanded a speedy trial.

On January 14, 2009, Fisher filed a "Certificate of Readiness for Trial." *Appellant's Appendix* at 37. In July, Fisher, pro se, filed a motion to dismiss citing the State's failure to comply with the IAD.[1] On October 27, 2009, Fisher filed a second motion for discharge alleging that his speedy trial rights under both the state and federal Constitutions and under Criminal Rule 4(C) had been violated. The trial court entered its order denying Fisher's motion to discharge on December 15, 2009. In its order, the court set forth the relevant stipulated facts as follows:

3. As indicated by the chronological case summary, incorporated by reference, the parties appeared on December 6, 2001. At that time, the Court was advised that the Accused was incarcerated in Floyd County, Indiana on federal charges.

---

**1.** The filing of this motion is not recorded on the CCS, but the motion itself is included in Fisher's appendix bearing a file stamp date of July 8, 2009.

4. The Accused has been continuously incarcerated on federal charges since that time. The State of Indiana has been aware of that fact at least since December 6, 2001.

5. The State of Indiana has a policy whereby no attempt is made to secure the attendance of an Accused who is incarcerated in a foreign jurisdiction, until that person has finished serving their sentence in that jurisdiction. . . .

\* \* \*

7. The accused has consistently, repeatedly and diligently attempted to bring this matter to trial.

*Appellant's Appendix* at 41–42. Given these facts, the court concluded:

> even in this case where this action has been pending since June 19th, 2001, and the State has been aware of the location of the Accused since December 6th, 2001 but has not pursued prosecution until the Accused finishes his federal sentence, and the Accused has consistently and diligently sought trial in this matter, there is no authority supporting the Accused's request for dismissal of this action.

*Id.* at 42–3. Also in its December 15 order, the trial court certified the matter for interlocutory appeal noting:

> the question presented in this action—whether the State has an affirmative obligation to pursue prosecution under the current circumstances—is a substantial question of law and of obvious, critical importance, not only in this action, but also in Indiana criminal cases generally.

*Id.* at 43. This court accepted jurisdiction over this interlocutory appeal on March 2, 2010.

On appeal, Fisher argues that the trial court erred in denying his motion to discharge. Specifically, Fisher argues that his constitutional right to a speedy trial, as guaranteed by the Sixth Amendment to the United States Constitution and article 1, section 12 of the Indiana Constitution, was violated. Fisher also argues that his discharge was required because the State failed to bring him to trial within one year as required by Crim. R. 4(C).

We begin with Crim. R. 4, which provides for the discharge of defendants when the State delays in bringing a defendant to trial. In essence, Crim. R. 4 is Indiana's codification of a defendant's speedy trial rights. Indiana has long held, however, that Crim. R. 4 "does not apply when a person is incarcerated in a foreign jurisdiction." *Howard v. State,* 755 N.E.2d 242, 245 (Ind.Ct.App.2001). In cases involving speedy trial rights of a defendant incarcerated in a foreign jurisdiction, we apply the IAD rather than Crim. R. 4. *Howard v. State,* 755 N.E.2d 242.

 By way of background, we note that the IAD is an interstate compact between forty-eight states, the District of Columbia, and the federal government that creates uniform procedures for lodging and executing a detainer. *See State v. Robinson,* 863 N.E.2d 894 (Ind.Ct.App. 2007), *trans. denied.* The IAD's purpose is to encourage the expeditious and orderly disposition of outstanding charges against persons already incarcerated in other jurisdictions. *Id.* The IAD process begins when the state bringing charges against a defendant in custody in another IAD jurisdiction files a detainer. *Id.*; *see also* I.C. § 35–33–10–4. Once the detainer is filed, the defendant may file a request for final disposition, which triggers the requirement under the IAD that he be brought to trial within 180 days. *See* I.C. § 35–33–10–4. There is, however, no statutory mandate obligating the State to file a detainer within a set time frame. Indeed, here, the State acknowledges that since learning

that Fisher was in federal custody in December 2001, it has taken no action to pursue prosecution of Fisher, including the filing of a detainer under the IAD. Absent the filing of a detainer, the provisions of the IAD are not triggered.

Given that Crim. R. 4 and the IAD do not provide grounds for Fisher's discharge, Fisher's argument must then be confined to a constitutional analysis of his right to a speedy trial. In evaluating whether delay has violated a defendant's constitutional rights, we review issues of fact using a clear error standard and questions of law de novo. *State v. Azania*, 865 N.E.2d 994 (Ind.2007) (citing *United States v. Thomas*, 167 F.3d 299 (6th Cir. 1999); *United States v. Smith*, 94 F.3d 204 (6th Cir.1996); and *United States v. Clark*, 83 F.3d 1350 (11th Cir.1996)), *clarified on reh'g on other grounds* 875 N.E.2d 701.

The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by article 1, section 12 of the Indiana Constitution. *Clark v. State*, 659 N.E.2d 548 (Ind.1995). This "fundamental principle of constitutional law" has long been zealously guarded by our courts. *Id.* at 551. Thus, to answer the broad question posed by this case: yes, the State has an affirmative duty to pursue prosecution of criminal defendants. Such duty arises out of the criminal defendant's constitutional right to a speedy trial.

The inquiry as to whether a defendant has been denied a speedy trial under the Sixth Amendment involves balancing a number of factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a *speedy* trial; and (4) any resulting prejudice to the defendant. *Danks v. State*, 733 N.E.2d 474 (Ind.Ct.App.2000) (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)), *trans. denied*. "[N]one of the four factors . . . [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker v. Wingo*, 407 U.S. at 533, 92 S.Ct. 2182. The *Barker* analysis is triggered where the delay exceeds one year. *Danks v. State*, 733 N.E.2d 474 (citing *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). Indiana has employed the same balancing test to evaluate speedy trial claims pursued under our state constitution. *Sturgeon v. State*, 683 N.E.2d 612 (Ind.Ct.App.1997), *trans. denied*.

Here, the State acknowledges that it has an affirmative duty to pursue prosecution of Fisher. This, however, does not end the inquiry. We must consider the *Barker* factors. With regard to the first *Barker* factor, we note that the delay in this case is undoubtedly long.[2] The timeline of events demonstrates that Fisher was charged in June 2001 and that the State was made aware that Fisher was in federal custody on December 6, 2001. Fisher presented himself for prosecution in July 2006 and thereafter "consistently, repeatedly and diligently attempted to bring this matter to trial." *Appellant's Appendix* at 42. As of October 2009, eight years after his arrest and over three years after he presented himself for prosecution,

---

**2.** Generally, post-accusation delay exceeding one year is presumptively prejudicial and triggers the *Barker* analysis. *See Hampton v. State*, 754 N.E.2d 1037 (Ind.Ct.App.2001), *trans. denied*. Under the *Barker* analysis, we are to consider the length of the delay beyond that necessary to trigger judicial examination of a claim of a violation of a defendant's speedy trial right. *See Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686.

Fisher had yet to be tried, thereby prompting him to file is second motion for discharge. *Compare Doggett v. United States,* 505 U.S. at 658, 112 S.Ct. 2686 (six-year delay "far exceed[ed]" the one-year threshold to raise a speedy trial claim) *and Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. 2182 (five-year delay between arrest and trial was "extraordinary") *with Davis v. State,* 819 N.E.2d 91, 100 (Ind.Ct.App. 2004) (six-month delay was "relatively short"), *trans. denied.* The length of the delay weighs heavily against the State.

We next consider the reason for the delay. In weighing this factor, we assess whether the government or the criminal defendant is more to blame for the delay. *See Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686. Here, the parties stipulated that the State's delay in prosecution was pursuant to a policy "whereby no attempt is made to secure the attendance of an Accused who is incarcerated in a foreign jurisdiction, until that person has finished serving their sentence in that jurisdiction." *Appellant's Appendix* at 41.

■ Generally, the State's efforts to bring a defendant to trial can be characterized as (1) diligent prosecution; (2) official negligence; or (3) bad faith. *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686. The State admits that, even though it knew of Fisher's whereabouts since at least December 2001, it took no prosecutorial action and therefore did not diligently pursue prosecution of Fisher. Further, there is no allegation that the State's failure to pursue prosecution was a deliberate attempt to delay prosecution in order to hamper the defense. We therefore cannot say that the State necessarily acted in bad faith in not pursuing prosecution. We are left with whether the State's efforts can be characterized as official negligence.

As noted above, the State acknowledges that it had an affirmative duty to make a diligent and good-faith effort to bring Fisher to trial. The State explains its delay in pursuing prosecution of Fisher by pointing to an express policy to forego prosecution of a defendant until such time as the defendant completes serving time in a foreign jurisdiction.

We observe that as a matter of broad application, the State's policy is of dubious utility. The State's policy certainly could not be used to sanction a delay in prosecution of a defendant who is to be confined in a foreign jurisdiction for say, twenty years, but would likely not impinge upon a defendant's constitutional rights if the delay were, for example, only three months. We certainly cannot approve of a blanket policy to sit back and wait for a defendant to complete his sentence in a foreign jurisdiction, especially under the facts of this case where the delay in prosecution is substantial. While there may very well be valid reasons underlying the State's express policy to delay prosecution until such time as a defendant finishes serving time in a foreign jurisdiction, the State's affirmative duty to diligently, and in good faith, pursue prosecution of defendants is the overriding factor to consider.

As noted above, the right to a speedy trial is a "fundamental principle of constitutional law" that has long been zealously guarded by our courts. *Clark v. State,* 659 N.E.2d at 551. Moreover, the IAD and other statutory provisions (e.g., Ind.Code Ann. § 35–33–10–5 (West, Westlaw through 2010 2nd Regular Sess.)) were enacted to provide the State with mechanisms to pursue prosecution of defendants serving sentences in foreign jurisdictions in an expeditious and orderly manner. In this case, the State's blanket policy is simply an unacceptable justification for delaying Fisher's prosecution. As the Court noted in *Doggett,* "[c]ondoning prolonged and unjustifiable delays in prosecution

would both penalize many defendant for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority." 505 U.S. at 657, 112 S.Ct. 2686. In this case, we cannot condone the State's "egregious persistence" in failing to prosecute Fisher for what has now amounted to five years, regardless of whether it was based upon an established, broadly-applied policy. *See id.*

As to the third factor, we note the record reflects that Fisher did not assert his right to a speedy trial until his request on July 25, 2006, over five years after his arrest on the charges, when he filed a notice of availability for prosecution. A year and half later, when he had still not been tried, Fisher filed his first motion to discharge alleging a violation of his right to a speedy trial. Fisher sought an interlocutory appeal of the denial of his first motion for discharge, which was denied. Fisher again presented himself for prosecution by filing a certificate of readiness in January of 2009. When the State continued to resist his efforts to bring the matter to trial, Fisher filed his second motion to dismiss the charges based on a violation of his right to a speedy trial. As the parties stipulated, Fisher "consistently, repeatedly and diligently attempted to bring this matter to trial." *Appellant's Appendix* at 42. That Fisher asserted his right to a speedy trial weighs in his favor.

Finally, we assess the fourth *Barker* factor—prejudice. Indiana courts have placed the burden of demonstrating actual prejudice on the defendant to prove a speedy trial deprivation. *Lee v. State*, 684 N.E.2d 1143 (Ind.1997). The State admits "it appears as though three of the *Barker* factors may currently weigh in favor of [Fisher]," but nevertheless argues that Fisher is not entitled to relief because at this stage in the proceedings it is prema-

ture to make a determination as to whether Fisher has been prejudiced. *Appellee's Brief* at 7. Fisher argues that he does not need to demonstrate prejudice because under the facts of this case, prejudice may be presumed.

We first address Fisher's arguments that under the facts of this case, he does not need to show prejudice. Fisher, citing *United States v. Brown*, 169 F.3d 344 (6th Cir.1999), first argues that prejudice is immaterial where the delay in prosecution is lengthy and caused by the State's bad faith. As we concluded above, there is no showing of bad faith on behalf of the State. The State simply followed a policy to delay prosecution until Fisher completed his federal sentence. Under these circumstances, we will not presume prejudice.

Fisher also directs us to *Scott v. State*, 461 N.E.2d 141 (Ind.Ct.App.1984), as support for his position that he need not show prejudice. In *Scott*, this court adopted a bright-line rule that if the delay between the filing of the charging information and the arrest of the defendant exceeds the applicable statute of limitation for the offense, despite the tolling of the statute, prejudice to the defendant from the delay may be presumed. The bright-line rule announced in *Scott* applies in the case of a delay between the filing of the information and the defendant's arrest and is thus inapplicable in this case. The case before us is distinguishable from that presented in *Scott*. Here, Fisher had notice of the charges at least as early as two days after they were filed when he appeared for the initial hearing which is unlike Scott, who could not begin gathering evidence necessary for his defense until seven years after the fact when the State decided to prosecute him. *See also Eguia v. State*, 468 N.E.2d 559 (Ind.Ct.App.1984). We will not presume prejudice under the rule announced in *Scott*.

Finally, Fisher argues that a showing of prejudice is unnecessary where consideration of the first three *Barker* factors coalesce in the defendant's favor. *See Prince v. Alabama*, 507 F.2d 693 (5th Cir. 1975). Indeed, the Supreme Court has noted that "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett v. United States*, 505 U.S. at 655, 112 S.Ct. 2686.

■ In assessing prejudice, we must keep in mind the interests of defendants that the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) most importantly, to limit the possibility that the defense will be impaired." *Danks v. State*, 733 N.E.2d at 481 (citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182). Here, Fisher does not contend that the delay in prosecution resulted in oppressive pretrial incarceration or undue anxiety. Fisher's claims of prejudice are that the delay has hindered his ability to present his defense and that he may miss out on the possibility that his sentences could be served concurrently (if convicted in the state action). Impairment of one's defense has been recognized as the most difficult speedy trial prejudice to prove because "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett v. United States*, 505 U.S. at 655, 112 S.Ct. 2686 (quoting *Barker v. Wingo*, 407 U.S. at 532, 92 S.Ct. 2182).

> And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter identify.

*Id.* We have also noted with regard to the need for showing particularized prejudice:

> "to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." In other words, up to a certain, unspecified point in time a defendant must demonstrate that a delay in being brought to trial has caused particularized prejudice, even if the delay resulted from official negligence. After that point the existence of prejudice may truly be "presumed" and the defendant may be entitled to speedy trial relief, even though proof of actual prejudice is lacking. The time period required to grant speedy trial relief without proof of actual prejudice shortens with the increased egregiousness of the government's conduct causing the delay and vice versa.

*Danks v. State*, 733 N.E.2d at 481 (citations omitted) (quoting *Doggett v. United States*, 505 U.S. at 657, 112 S.Ct. 2686). Here, in light of our analysis of the first three *Barker* factors (excessive delay, inexcusable explanation for the delay, and Fisher's assertion of his right to a speedy trial), we need not address whether Fisher has demonstrated actual prejudice because under the facts of this case, we will presume prejudice.

In sum, the answer to the question presented in this case is: yes, the State has an affirmative duty to pursue prosecution of Fisher and such duty derives from a defendant's right to a speedy trial as guaranteed under the Sixth Amendment of the United States Constitution and article 1, section 11 of the Indiana Constitution. As set forth above, our balancing of the *Barker* factors under the facts of this case leads us to conclude that Fisher's constitutional right to a speedy trial was violated. Fisher is entitled to relief. We therefore reverse the trial court and remand with in-

structions to dismiss the underlying action against Fisher.

Judgment reversed.

BARNES, J., and CRONE, J., concur.