# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2019, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dominique Rena Triblet,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

October 29, 2019

Court of Appeals Case No.
19A-CR-515

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No.
49G21-1802-F5-4859

**Bailey, Judge.**

# Case Summary

Dominique Rena Triblet ("Triblet") appeals her conviction of Carrying a Handgun without a License, elevated to a Level 5 felony due to her conviction of a felony within the prior fifteen years.[1]  We affirm.

# Issues

Triblet presents two issues for review:

> I.    Whether the trial court abused its discretion by denying defense counsel's request for a continuance for lack of preparation because counsel had primarily concentrated on another criminal case scheduled for trial on the same day; and

> II.   Whether the trial court abused its discretion by refusing to instruct the jury on the defense of necessity.

# Facts and Procedural History

On February 5, 2018, Triblet received a telephone call from a man she knew only as "Whitey."  He asked that Triblet meet him at a residence on Hillside Avenue in Indianapolis to discuss "an important matter."  (Tr. Vol. II, pg. 98.) Triblet suspected that Whitey had ordered her brother's murder, but she agreed to meet with him.  She and her cousin drove to Whitey's residence.

---

[1] Ind. Code § 35-47-2-1(e)(2)(B).

[4]     When Triblet entered the residence, she observed eight males dressed in black, and there were "guns everywhere." *Id.* at 110. She had a "gut feeling" that she was in danger. *Id.* at 102. Undetected, Triblet took a handgun from the kitchen counter, and she then left the residence with Whitey following closely behind her.

[5]     Triblet called her mother to come and get her. Unwilling to end that call to place another, Triblet asked a neighbor to call 9-1-1. The neighbor refused to do so and Triblet then approached the home of Brooke Pyles ("Pyles") and asked that she call 9-1-1. Pyles saw Triblet pointing the gun and became frightened and headed for the basement. Nevertheless, Pyles called 9-1-1. Before the police arrived, Pyles heard shots being fired outside her house.

[6]     When police arrived, they took hold of Triblet and attempted to pull back her arms. Some scuffling occurred, during which the handgun fell from Triblet's waistband. Triblet was arrested and charged with Carrying a Handgun without a License, Pointing a Firearm, Criminal Recklessnes, and Resisting Law Enforcement.

[7]     On December 11, 2018, Triblet was brought to trial before a jury. Triblet testified and admitted that she had possessed and fired a handgun. According to Triblet, she took the gun because she feared for her life and she fired into the air to deter Whitey from his pursuit of her. She denied that she had pointed the

gun at Pyles or resisted arrest.[2] The trial court instructed the jury on self-defense but refused Triblet's proffered instruction on the defense of necessity. The jury found Triblet guilty of Carrying a Handgun without a License but acquitted her on all other charges.

[8] Triblet waived her right to have a jury determine whether she had committed a prior felony within the requisite statutory period for elevation of her offense to a Level 5 felony. On February 1, 2019, the trial court found sufficient evidence supported the elevation and sentenced Triblet to five years imprisonment, with two years suspended to probation. Triblet now appeals.

# Discussion and Decision

## Motion for a Continuance

[9] Triblet's trial was first scheduled for May 1, 2018, but was rescheduled for September 11, 2018, upon the request of Triblet's initial counsel. On August 14, 2018, Dana Childress-Jones ("Defense Counsel") appeared as Triblet's new counsel. At a pretrial conference on September 4, 2018, Defense Counsel moved to continue the trial, and trial was reset for October 16, 2018. The State moved to continue the October trial setting, and trial was reset for December 11, 2018.

---

[2] Triblet testified that she had yelled out in pain due to a recently broken leg.

On December 5, 2018, the State and Defense Counsel appeared for a final pretrial conference on Triblet's case. Defense Counsel advised the trial court that plea negotiations were "too far apart," such that Triblet's case was likely proceeding to trial. (Supp. Tr., Vol. II, pg. 4.) Defense Counsel further advised that she was also counsel on another case scheduled for trial on the same day and she "was starting to decide which one I should really focus on." *Id.* at 5. At the conclusion of the brief hearing, the trial court acknowledged that Defense Counsel had "two ahead of Ms. Triblet as it stands right now [Blow and Barnett]" but confirmed Triblet's trial setting. *Id.* at 6. Defense Counsel expressed her thanks.

Thus, three cases were "stacked" for jury trials on the same day. (Tr. Vol. II, pg. 7.) The day before the scheduled trials, the case of defendant Blow was continued. As for the Barnett case, he and the State reached a tentative plea agreement at approximately 5:00 p.m. Defense Counsel sent e-mail messages to the trial court and prosecutor expressing her need for a continuance in Triblet's case because she had concentrated on Barnett's case. Feeling ill, Defense Counsel did not continue to check her e-mail in the evening hours.

On the day of trial, Defense Counsel appeared and learned that the prosecutor opposed an additional continuance. At a conference outside the presence of the jury, Defense Counsel insisted that she was unprepared, and could provide only ineffective assistance if forced to proceed immediately with Triblet's trial. The trial court reminded Defense Counsel that she was familiar with the court's practice of "stacking," with cases "congested off" rarely before "the very last

minute." *Id.* The trial court listened to the recording of the December 5, 2018 final pretrial conference and clarified that the Triblet trial setting had been confirmed. The trial court denied Defense Counsel's oral motion for a continuance but permitted her a one-hour delay to obtain the Triblet file. Triblet now argues that the denial of a continuance was an abuse of the trial court's discretion because Defense Counsel was forced to trial despite repeated protests that she was unprepared.

> Rulings on non-statutory motions for continuance are within the trial court's discretion and will be reversed only for an abuse of that discretion and resultant prejudice. *Maxey v. State*, 730 N.E.2d 158, 160 (Ind. 2000). An abuse occurs only where the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Palmer v. State*, 704 N.E.2d 124, 127 (Ind. 1999). "There is a strong presumption that the trial court properly exercised its discretion." *Warner v. State*, 773 N.E.2d 239, 247 (Ind. 2002).

*Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

[13] We are not unsympathetic to the significant challenges faced by defense attorneys assigned to multiple "stacked" cases. In some circumstances, the combination of over-scheduling and last-minute moves for congestion could render an attorney unable to pursue an able defense. But here, at bottom, the request for a continuance was a last-minute oral request made four months into client representation and one week after confirmation of the trial setting. And it appears that Defense Counsel ably represented her client – who was ultimately

acquitted of three charges. We commend her commitment to advocacy even when confronted with less than ideal circumstances.

[14] As for a strategy that might have been implemented with additional preparation, Triblet suggests only that Defense Counsel could have presented testimony from Triblet's mother. Triblet's mother, who was not an eyewitness, could have confirmed that Triblet called her when leaving Whitey's residence. Triblet admitted that she possessed a gun without a license. The jury's task was to determine whether the conduct was excused under the law. As such, the relevance of Triblet's mother's testimony would have been marginal, at best. We cannot say that the trial court abused its discretion in denying the motion for a continuance.

## Defense of Necessity Instruction

[15] A trial court's decision to give or refuse a jury instruction is reviewed for an abuse of discretion. *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015). We consider (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions. *Id.* The parties do not dispute whether Triblet's tendered instruction is an accurate statement of the law or whether its substance was covered by another instruction. As such, our focus is upon whether there was evidence in the record to support giving the necessity instruction.

The common law defense of necessity has been referred to as a "choice of evils" defense. *Toops v. State*, 643 N.E.2d 387, 389 (Ind. Ct. App. 1994). The following are traditional prerequisites in establishing the defense:

> (1) the act charged as criminal must have been done to prevent a significant evil;
>
> (2) there must have been no adequate alternative to the commission of the act;
>
> (3) the harm caused by the act must not be disproportionate to the harm avoided;
>
> (4) the accused must entertain a good-faith belief that his act was necessary to prevent greater harm;
>
> (5) such belief must be objectively reasonable under all the circumstances; and
>
> (6) the accused must not have substantially contributed to the creation of the emergency.

*Id.* at 390. A defendant must present at least some evidence on each of these elements to warrant the necessity instruction, but "[e]ven if there is only a 'scintilla' of evidence in support of a criminal defendant's proposed defense instruction, it should be left to the province of the jury to determine whether that evidence is believable or unbelievable." *Hernandez*, 45 N.E.3d at 378 (citing *Howard v. State*, 755 N.E.2d 242, 247-48 (Ind. Ct. App. 2001)). In determining whether the refusal of a proffered instruction warrants reversal, we

assess whether the defendant was prejudiced by the trial court's failure to give the instruction. *Id.*

[17] Triblet likens her circumstances to those of the defendant in *Hernandez*, whose conviction for carrying a handgun without a license stemmed from a vehicle stop. *See id.* at 375. Hernandez was a reluctant passenger in the vehicle of his neighbor, Gray, when that vehicle was stopped. Immediately upon his exit from the vehicle, Hernandez notified an officer that he was in possession of a gun. Because he had no license for the weapon, Hernandez was arrested, charged, and brought to trial for carrying a handgun without a license. Hernandez pursued a necessity defense, claiming that Gray was a dangerous felon who had insisted that Hernandez take possession of the handgun during the traffic stop. *Id.* Hernandez testified that Gray had commanded him to "take the gun or else" and Hernandez understood this as a threat from Gray to shoot him. *Id.* According to Hernandez, he tried to place the gun under a seat, but Gray insisted that he put it in his pocket. *Id.* Our Indiana Supreme Court vacated Triblet's conviction for instructional error and remanded for a new trial, concluding that there was "some evidence" that warranted giving the defense of necessity instruction tendered by Hernandez. *Id.* at 376.

[18] In this case, the trial court observed that Triblet had placed herself in the circumstances she considered emergent. Also, the trial court found a lack of evidence that there was no adequate alternative to Triblet's possession of the gun. We agree with the trial court's characterization of the evidence. Triblet testified that she experienced a "gut feeling" that her life was in danger and she

decided to leave. (Tr. Vol. II, pg. 102.) But there is no evidence that Triblet's exit was impeded by conduct such as threatening words, movement, or gestures. With no impediment, Triblet's choices were to walk out or to walk out armed. She chose the latter course and grabbed the gun, undetected. This does not evince a lack of an adequate alternative.

[19] And, even if we assume that Triblet faced an emergency inside the residence, she retained the handgun as circumstances evolved to safety. Unlike the defendant in *Hernandez,* Triblet did not freely divest herself of the gun at her first opportunity. It fell from her waistband during her arrest, without her having informed officers of its existence. Even if the jury were convinced that Triblet took the gun out of necessity, the jury would likely have found that her subsequent placement of the gun in her clothing amounted to carrying a handgun without a license. We cannot say that the omission of a defense of necessity instruction prejudiced Triblet.

# Conclusion

[20] Triblet has not shown that the trial court abused its discretion in denying her motion for a continuance or in refusing her instruction on the defense of necessity.

[21] Affirmed.

Najam, J., and May, J., concur.