HAROLD SMITH *v.* STATE OF INDIANA.

[No. 876S234. Filed November 7, 1977.]

*Patrick E. Chavis, III*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Daviel Lee Pflum*, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with the commission of a robbery while armed, Ind. Code § 35-12-1-1 (Burns 1975), and kidnapping, Ind. Code § 35-1-55-1 (Burns 1975). After trial by jury, he was acquitted on the kidnapping charge but was found guilty of armed robbery, and sentenced to fifteen years imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court committed error by denying the defendant's motion for discharge based upon an alleged violation of Ind. R. Crim. P. 4(B) and his constitutional right to a speedy trial.

(2) Whether the trial court erred in requiring the defendant, over his timely objection, to stand trial while wearing prison clothing.

(3) Whether there was sufficient evidence to sustain the guilty verdict.

## ISSUE I

After being charged and arraigned, defendant was released on bond pending trial. He failed to appear in court for pre-trial conference. His bond was forfeited, and on March 21, 1973, a warrant was issued for his arrest. On October 29, 1974, while being held in Mississippi to answer federal criminal charges, he filed a *pro se* motion for a speedy trial, pursuant to Ind. R. Crim. P. 4 (B). Defendant filed his motion in the proper court, and the court denied the motion on the ground that defendant was not in custody on the Indiana

charges against him, but he failed to file a copy of the motion with the prosecutor's office. There is no indication that the State had knowledge of defendant's location prior to the receipt of his motion.

After defendant stood trial in federal court in Mississippi in December of 1974, he was returned to Indiana. He first appeared in court on January 10, 1975, which was more than seventy days following his October 29, 1974 motion for a speedy trial. Defendant claims as error the trial court's denial of his motion to be discharged for the court's failure to bring him to trial within seventy days after the filing of his request.

Although Indiana formerly made exception to the rules on discharge for delay in bringing a defendant to trial when he was in jail for another conviction, *Bewley* v. *State*, (1966) 247 Ind. 652, 220 N.E.2d 612, or in jail in another jurisdiction, *State* v. *Hadden*, (1967) 248 Ind. 422, 234 N.E.2d 499, in reliance upon *Smith* v. *Hooey*, (1969) 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607, this Court expressly overruled those prior decisions, *Fossey* v. *State*, (1970) 254 Ind. 173, 258 N.E.2d 616. Writing for the majority in *Fossey*, Justice Hunter stated:

> "* * * the above exceptions to the speedy trial protection afforded an Indiana defendant can no longer be countenanced by this court. The fact that a defendant is in jail on a prior conviction, whether he be in jail in Indiana or another jurisdiction, does not vitiate his interest in a speedy trial on the second charge * * *. In light of the *Hooey* decision, such a defendant clearly has a constitutional right to a speedy trial * * *." 254 Ind. at 180.

But, saying that a defendant has a constitutional right to a speedy trial in Indiana when he is being held for trial in another jurisdiction does not necessitate the application of Criminal Rule 4 (B) and its seventy day time limitation. As was stated in *Fossey, supra:*

> "[T]he standard imposed on Indiana courts and prosecutors is stricter than that imposed in the federal system since

any delay exceeding the specified time limit is considered a *per se* denial of the 'speedy trial' right." 254 Ind. at 179

While it may be reasonable to impose the time limit of Criminal Rule 4 (B) when a criminal defendant is within the exclusive control of the State of Indiana, for purposes of certainty and ease of administration of the rule, it becomes irrational to extend its application to a defendant who is incarcerated in another jurisdiction which has an interest in retaining the defendant in its custody, either for trial or to serve a sentence.

The standards for a speedy trial when the accused is incarcerated outside the State were established in *Smeltzer* v. *State,* (1970), 254 Ind. 165, 258 N.E.2d 647, and were followed in *Hart* v. *State,* (1973) 260 Ind. 137, 292 N.E.2d 814. The factors to be considered are:

> "(1) the length of time which transpires between the demand by the accused for a speedy trial, and the initiation of action by the proper authorities in this State to bring him to trial;
>
> "(2) the procedures followed by the State of Indiana in seeking the release of the accused from the jurisdiction in which he is incarcerated; and
>
> "(3) The compliance by the officials of the State of Indiana with the pertinent statutory provisions of the law of this state and of the incarcerating jurisdiction." *Smeltzer, supra,* 254 Ind. at 169-170, 258 N.E.2d at 650.

Or, more generally, "Upon * * * demand, [the state has] a constitutional duty to make a diligent, good-faith effort to bring defendant before the * * * court for trial." *Smith* v. *Hooey, supra,* 393 U.S. at 383.

Although the specific details of the method employed by the State of Indiana to obtain defendant's presence and of the time the procedure was first initiated are not contained in the record, inasmuch as the defendant did not apprise the prosecutor's office of his location and further was unavailable for removal to Indiana until after his December 1974 trial in Mississippi, his presence in

court on January 10, 1975, evinces that the State exercised the due diligence required by the constitution.

## ISSUE II

Defendant asserts that, over timely objection, he was compelled to appear at trial wearing identifiable prison clothing. In *Estelle* v. *Williams*, (1976) 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, the Supreme Court of the United States stated, "The State cannot, consistent by with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, * * *." 425 U.S. at 512.

The Court in *Williams, supra,* was chiefly concerned with the element of compulsion, noting that under some circumstances a defendant might make the tactical decision to appear in prison garb with the hope of eliciting the jury's sympathy. Accordingly, the Court held that proper objection by defendant is necessary to establish a constitutional violation. The Justices were divided upon that point, however. Obviously, the preferred procedure is for the trial judge to advise the defendant of his right not to appear before the jury in identifiable jail garb and permit him to make a timely election. It should also be noted that the Court of Appeals had held in the *Williams* case that "waiver of the objection cannot be inferred merely from failure to object, if trial in prison garb is customary in the jurisdiction." (500 F.2d 206). The Supreme Court did not take issue with that holding. Rather, it determined that the record disclosed no finding that the practice of the trial court was to require non-bailed defendants to stand trial in prison garments, if timely objection was made and that the district court had concluded that it was the practice of the particular judge to permit any accused, who so desired, to change into civilian clothing.

In *Williams,* the Supreme Court made the additional observation that compelling the defendant to appear in prison clothing might be harmless error in circumstances under which the jury would learn of his incarceration in any event.

It is our opinion that the facts of the case before us do not warrant a reversal, notwithstanding that the defendant protested his being brought to trial in jail garb. First, there is nothing in the record to reflect that his garb was identifiably that of a prisoner. At his insistence and despite admonition from the court, the defendant was acting as "co-counsel" with the numerous lawyers variously assigned to and released from his defense. He took an active role throughout the entire proceedings. The objection to his dress came as selection of the jury was about to commence and was included in a battery of motions and objections. In part, the colloquy was as follows:

"*Court:* All right, is that the sum total of the motions?

"*Mr. Smith:* No, sir, it isn't. At this time I believe the Court has a record of the letter I sent to Mr. Dodd and I'm sure it's in the files of this case with the present attorneys, Dodd, and I made several requests of him at that time, and instead of going into at length on that, I'll just make reference to that. I did want those discovery and production motions made and hopefully the material produced to me. This was never complied with, and also I'm somewhat puzzled at the late date of this motion to dismiss the kidnapping charge, the morning of the trial, it seems a little bit out of time to me. And the, my present attire that I'm wearing here, the clothing, I'd like to make an objection about being brought here in prison clothes, and the objection about my dress in general and appearance this morning, I'd like to be dressed in clothing comparable to what the Jury would be dressed in, or any other gentleman in this Courtroom at this time, and this charges, I don't know whether there's any provisions in the Indiana state law or Constitution about charges being submitted to the Grand Jury, here again I'm only making a matter of record, if I have a right to this or not, I'm not aware of whether I do or not, but I would have liked to, for these charges to have been submitted to the Grand Jury instead of just brought against me as a result of complaint or affidavit or whatever.

"*Court:* All right, anything else?

"*Mr. Smith:* Yes, sir, at this time I make a motion to dismiss the present counsel and further make a motion that this action be delayed while the Habeas Corpus that is filed

in the Indiana Supreme Court and it is presently pending, and I believe this Court's aware of it, the present attorney, counsel, I think is aware of it also, it's been filed in Indiana Supreme Court as cause number PS 361, it's been filed somewhere around December 14th or 15th, 1975, and I think while there is a Habeas Corpus action pending, the purpose of the Habeas Corpus is to test wrongful incarceration, relief of incarceration, I believe that this Court is without jurisdiction to proceed any further, and by filing of this action in the Indiana Supreme Court, they did accept jurisdiction of the cause."

Although it is clear that the defendant was objecting to his clothing and although it appears that they were prison or jail clothing, there is nothing to disclose whether or not they were *identifiable* as such. There is nothing in the *Williams* opinion to indicate that a non-bailed defendant is entitled to any particular mode of dress but only that he not be required to appear in *identifiable* prison or jail dress. A defendant acting as his own counsel, of necessity, must be held to the established rules of procedure, the same as trained legal counsel. A party who claims error bears the burden of producing a record which bears out his claim. One of the skills of trained lawyers is the ability to assure that his objections and motions are so articulated and presented that the record will reflect the precise issue and the surrounding circumstances with clarity, so that on appeal, we may understand the issue in context. There being no showing to the contrary, we assume that the trial judge ruled properly and that the defendant's garb was not identifiably that of a prisoner.

## ISSUE III

In support of his insufficiency claim, the defendant contends that the evidence disclosed that the property was not taken from its custodian but had been abandoned ██ by the custodian prior to its taking. If it had, in fact, been abandoned, the evidence also disclosed

that such abandonment had been induced by the defendant by abduction of the custodian and putting him in fear. The victim, Austin Zachery, was an Indiana State Policeman who happened upon the defendant and another in the process of stealing a state highway department tractor. While investigating the incident, the thieves disarmed the policeman at gunpoint and held him captive while they considered ways and means of dislodging the tractor from a ditch. Ultimately, they decided to accompany the policeman in the squad car to a service station, where it was believed a wrecker could be obtained. They then unloaded the trooper's gun and returned it to him, in order that he would not present an unusual appearance. Trooper Zachery drove the two to the service station, as they commanded; and as they arrived, another state policeman, Dwight Wilson, drove his automobile into the driveway. Seizing the opportunity to escape, Zachery jumped from his vehicle and shouted a warning to Wilson. Defendant and his accomplice, however, quickly restrained Wilson and disarmed him, and each then drove away in a state police automobile. Under such circumstances, it cannot be said that Trooper Zachery had abandoned his vehicle.

The defendant was also charged with having robbed Zachery of his gun, and the evidence clearly supports the conclusion that he did. Although the defendant later returned the gun, unloaded, to Zachery, he did so for purposes of his own. He remained in command of both Zachery and the gun. The evidence sufficiently supports the conclusion that at the time he took the gun, he took it from the person of Zachery with the requisite intent to deprive him of its use and possession.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 368 N.E.2d 1154.