**Frederick HEFLIN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1079S269.**

Supreme Court of Indiana.

Feb. 5, 1981.

Harriette Bailey Conn, Public Defender, Paul Jeffery F. Roberts, Deputy Public Defender, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from the denial of a petition for post-conviction relief. The appellant was convicted in January, 1976, of three counts of committing a felony while armed, Ind.Code § 35–12–1–1 (repealed effective October 1, 1977).

On direct appeal, *Heflin v. State*, (1977) 267 Ind. 427, 370 N.E.2d 895, appellant raised, among other issues, a claim that he was denied a speedy trial under the provisions of Ind.R.Crim.P. 4(B). This Court, assuming arguendo that Criminal Rule 4(B) was applicable, deemed the right to a speedy trial to have been waived by appellant's failure to object to a trial date scheduled beyond the seventy-day limit set by the rule. The issue, the Court held, was therefore forfeited on appeal.

In his petition for post-conviction relief, appellant raised the sole claim that he had been denied effective assistance of counsel. He alleged in his petition that his attorney failed to object properly to the trial date; that his attorney failed to object to the denial of his motion for a lineup; that on appeal his attorney misstated the law and the facts on the speedy trial issue, and failed to preserve the lineup issue in the motion to correct errors; and that on the petition for rehearing his attorney did not address "misstatements of facts in the record" upon which the court based its waiver holding.

Following denial of the petition and denial of the motion to correct errors, appellant

brought this appeal, raising five issues. The first four are as follows:

(1) Whether the court erred in law in finding that the appellant was not entitled to the benefit of the speedy trial provisions of Indiana Criminal Rule 4(B).

(2) Whether the court erred in finding that the Interstate Compact on Detainers takes precedence over the application of Indiana Criminal Rule 4(B).

(3) Whether the court erred in finding that appellant's constitutional rights were adequately safeguarded by the application of the principles enunciated in *Barker v. Wingo*, (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101.

(4) Whether the court erred in finding that the appellant was not in custody of the State of Indiana after return on October 20, 1975, until trial on January 5, 1976.

These four issues underlie a fifth claim that the post-conviction court erred in finding that the petitioner was not denied adequate legal representation.

In order to review these claims we must first briefly examine the relevant facts.

Appellant was charged by information with the underlying felony, and a bench warrant was issued for his arrest on January 13, 1975. The warrant was not served until October 20, 1975. Meanwhile, appellant was arrested on May 2, 1975, on federal charges and held in St. Joseph County jail from May 5, 1975, until July 18, 1975, when he was transferred to federal prison in Michigan.

On July 27, 1975, Indiana authorities placed a detainer on appellant while he was still in federal prison in Michigan. On September 9 or 11 appellant pro se filed what was styled a motion for speedy trial in the St. Joseph Superior Court. The court ordered the prosecutor's office to procure appellant's attendance in court for disposition of the pending charge, and on October 20, 1975, he arrived at the St. Joseph County jail from federal prison in Oklahoma. He was served with the Indiana warrant on that day. On October 23, 1975, appellant appeared in court and counsel was appoint-

ed for him; arraignment was continued to October 27, 1975, and then to October 31, 1975, at his request. On October 31, 1975, appellant appeared in court with counsel and orally moved for a speedy trial and for dismissal of the charges based on alleged defects in the information. The court denied the motion to dismiss and ruled that the time for a speedy trial should run from October 31, 1975.

On December 2, 1975, the court set the case for trial on January 5, 1976. On December 29, 1975, appellant was brought before the court in connection with a pro se letter motion for discharge. His counsel on that day filed a motion to dismiss the information based not on a Criminal Rule 4(B) claim, but rather on constitutional claims of denial of due process and denial of the right to a speedy trial. Counsel argued that the State's failure to serve the January 13, 1975, bench warrant while appellant was in St. Joseph County jail in federal custody from May 5 to July 18 worked a prejudice against his client in securing witnesses and preparing the case. Counsel further argued that his client was available to Indiana authorities during the whole time, even though he was in federal custody, through the provisions of the Interstate Agreement on Detainers (the Agreement), Ind.Code § 35–2.1–2–4, to which the United States is also a signatory, 18 U.S.C.App., 84 Stat. 1397–1403.

Counsel's motion was denied. Appellant's pro se motion for discharge, referred to in the court docket in the record of the original proceedings only as "his letter on legal sized paper styled 'Motion for Discharge'", was not ruled upon. There is no reference to it in appellant's brief on direct appeal, but appellant testified that this letter motion was based on a Criminal Rule 4(B) claim that the January 5, 1976, trial setting was beyond the seventy-day limit established by the rule (calculated, presumably, from the September 9 or 11 date of his request for a speedy trial sent from federal prison).

In resolving the question of whether appellant's counsel was ineffective, the post-

conviction trial court adopted three alternative views on the allegations of ineffectiveness as to the Criminal Rule 4(B) speedy trial claims. First, the post-conviction trial court held that a claim of ineffectiveness of counsel could not be based on failure to raise, preserve for appeal, or argue properly, the issue of Criminal Rule 4(B) time limits. This is because Criminal Rule 4(B) is not applicable in this case. Rather, the court held, since appellant was imprisoned in another jurisdiction, his September 9 or 11, 1975, request triggered the application on the Agreement on Detainers. The time limits there are either one hundred eighty days from the date of receipt of the request or one hundred twenty days from his arrival in Indiana on October 20, 1975. The January 5, 1976 trial setting was within either of these limits.

Second, the post-conviction court held that even if Criminal Rule 4(B) were applicable, its seventy-day time limit must be calculated from October 31, 1975, since a Criminal Rule 4(B) motion could not have been made until the prisoner was in Indiana and his first request under Criminal Rule 4(B) in Indiana was made on October 31, 1975. Based on this, the seventy-day deadline would have fallen on January 9, 1976, and no objection could have been made to the January 5 setting.

Finally, the post-conviction court found, based on testimony at the hearing, that the appellant had instructed his counsel not to object. In this alternative, the failure to object was voluntarily waived as a matter of trial strategy.

■ We adopt the holding of the trial court that the provisions of the Agreement apply in this case. This Court has said that it is irrational to extend the application of Criminal Rule 4(B) to a defendant who is incarcerated in another jurisdiction. *Smith v. State,* (1977) 267 Ind. 167, 368 N.E.2d 1154.

In enacting the Agreement, the Indiana Legislature recognized the problem of speedy trial rights of out-of-state prisoners subject to Indiana detainers based on untried charges:

"The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations, or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

Because we hold that the time limits of the Agreement apply, we can entertain no claim of ineffectiveness arising from counsel's failure, if any, to assert at trial, preserve on appeal, or address on rehearing, claims flowing from Criminal Rule 4(B).

■ Appellant also claims that counsel was ineffective for having failed to present a coherent theory of his client's Sixth Amendment right to a speedy trial. Appellant appears to challenge the trial court's finding that his constitutional rights were adequately safeguarded by the tests set out in *Barker v. Wingo, supra.*

In *Barker,* the Court found no constitutional basis for holding that the speedy trial right can be quantified into a specific number of days or months. It identified instead "some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id.* 92 S.Ct. at 2192. Four such factors which the Court identified are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.*

This Court held in the direct appeal that there was not "a sufficient delay in this

case to prejudice the appellant to the extent of constituting reversible error." The issue having no substantive merit, we cannot say that counsel was ineffective for having failed to present the issue properly.

■ The remaining claim of ineffectiveness of counsel is that counsel failed to object to the denial of his motion for a lineup and failed to preserve the issue on appeal. Appellant's argument on this claim is scanty, consisting only of an unsupported assertion that since there was an alibi defense, the issue of identification was pivotal.

The trial court determined that a trial judge has discretion to order such a lineup and reviewed the factors which ought to be considered. It found that discretion was properly exercised in this case because there was no substantial risk of misidentification, citing the following evidence in the record of the original proceedings:

At least five of the victims, four of whom were witnesses, knew the defendant before the robbery. They recognized him as soon as he entered the room to commit the robbery because although he wore a nylon stocking mask it rolled up to the top of his nose three or four times, revealing his features. These same four separately, and under orders not to discuss whom they had seen with each other, picked defendant's photograph out of police mug books containing sixty to eighty photographs and did so either in the immediate aftermath of the robbery or within three days after the robbery. The victims had been in the room with the robber for fifteen minutes.

While the pre-trial motion is discretionary, it is favored. The positive identifications through photographic arrays and at trial, however, may well have justified counsel in his decision not to pursue the denial on appeal. The trial court did not err in determining that this claim could not support a contention that counsel was ineffective.

The opinion of the trial court is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.