Lance McCLOUD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–1102–CR–77.

Court of Appeals of Indiana.

Dec. 20, 2011.

Ruth Johnson, Valerie K. Boots, Marion County Public Defender Agency, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

In this interlocutory appeal, Lance McCloud appeals the trial court's denial of his motion to dismiss the charges pending against him because he was not brought to trial within one year of the date he was charged with the offenses. McCloud raises two issues that we consolidate and restate as: whether the trial court erred in denying his motion to dismiss because his right to a speedy trial, provided by Rule 4(C) of the Indiana Rules of Criminal Procedure and the federal and state constitutions, was violated.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 15, 2009, law enforcement arrested McCloud, and the next day, October 16, the State charged McCloud with four misdemeanor offenses. At an October 19 pretrial conference, McCloud requested an early trial pursuant to Indiana Criminal Rule 4, and the matter was scheduled for a court trial on November 30, 2009. On October 20, 2009, McCloud posted bond and was released. The parties appeared for trial on November 30, 2009, but the State moved for a continuance, which the trial court granted over McCloud's objection. The trial court set a new trial date of February 9, 2010. McCloud failed to appear for trial on February 9, 2010, and an arrest warrant was issued.

On March 26, 2010, the surety agent on McCloud's October 2009 bond filed a "Petition to Release Surety," which stated that McCloud was "currently incarcerated in the Federal Transfer Center in Oklahoma City, Oklahoma" and requested the trial court to release liability on the bond. *Appellant's App.* at 29–33. Attached to the petition was a document that indicated McCloud was a federal inmate, was located in Oklahoma City FTC, and had an expected release date of October 8, 2010.[1] *Appellant's App.* at 32.

Approximately seven months later, on October 13, 2010, the trial court held a warrant surrender hearing, where McCloud appeared with counsel. At the hearing, McCloud explained that he was on probation for a federal handgun offense when he was arrested on the current Indiana charges in October 2009. Consequently, he was in violation of his federal probation. In December 2009, he appeared at a federal probation violation hearing and admitted the probation violation. McCloud served his federal sentence with the Federal Bureau of Prisons ("BOP") in Illinois, until being released in August 2010, when he was sent to the Volunteers of America in Indianapolis ("VOA") to complete the last two months of his federal sentence in the VOA's work-release program. While at the VOA, he

---

1. The certificate of service reflected that a copy of the "Petition to Release Surety" was hand-delivered to the Marion County prosecutor. The State does not expressly state whether it received the petition and attached document; however, as discussed more fully below, the State maintains it did not know McCloud's whereabouts.

violated the terms of that placement, and he was taken into federal custody. In late September or early October, McCloud was released from federal custody and transferred to state custody at the Marion County Jail.[2]

At the October 13, 2010 warrant surrender hearing, McCloud's counsel argued that, although McCloud had been in federal custody for approximately ten months, the State was required to bring him to trial on or before Friday, October 15, 2010 in order to comply with the Criminal Rule 4(C) one-year deadline. McCloud specifically objected to any trial date beyond October 16, 2010, one year after he was originally charged. The trial court set the matter for a pretrial hearing on November 23, 2010.

At the November 23 hearing, the parties debated the issue of whether those months that McCloud was in federal prison should be included in the Criminal Rule 4(C) one-year calculation. The State argued that those months should not count against the State and that the time of McCloud's incarceration should extend the date by which it must bring McCloud to trial. The trial court agreed and set the matter for bench trial on January 7, 2011. Prior to the start of trial on January 7, 2011, McCloud filed a written motion to dismiss and a supporting memorandum of law. At the conclusion of the hearing on McCloud's motion, the trial court orally denied it. McCloud sought and received permission to file this interlocutory appeal.

## DISCUSSION AND DECISION

■ McCloud argues that the trial court erred by denying his motion to dismiss the charges pending against him because the State should have brought him to trial on or before October 16, 2010, one year after he was originally charged. Initially, we note that McCloud was incarcerated in federal prison in another state for approximately ten months of that one-year period. Indiana has denominated two methods of securing the presence of defendants who are in custody of foreign jurisdictions, and, because McCloud was imprisoned out of state, we find that a brief discussion of them is warranted.

■ The Interstate Agreement on Detainers Act ("IAD") is codified in Indiana at Indiana Code section 35–33–10–4, and the writ of habeas corpus ad prosequendum is codified at Indiana Code section 35–33–10–5. *See Sweeney v. State,* 704 N.E.2d 86, 94–95 (Ind.1998), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 793 (1999). "While the statutes are separate and distinct, they have similar purposes in that both set forth procedural safeguards for securing the presence of a prisoner in Indiana who is located in a foreign jurisdiction." *Id.*

■ Indiana is one of forty-eight states who, along with the District of Columbia and the Federal Government, is a party to the IAD. *Conn v. State,* 831 N.E.2d 828, 830–31 (Ind.Ct.App.2005) (citing *Alabama v. Bozeman,* 533 U.S. 146, 148, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001)), *trans. denied.* The IAD is an interstate compact and its purpose is to encourage the expeditious and orderly disposition of outstanding charges against

---

**2.** The record before us is conflicting with regard to McCloud's release date from federal custody. His reply brief states that he was released from federal custody and transferred to state custody on October 8, 2010, and the transcript indicates likewise. *Reply Br.* at 9

n. 6 (citing *Tr.* at 28, 31); *see also Tr.* at 22, 24. However, McCloud's January 2011 Motion to Dismiss states that he was transported from federal custody to the Marion County Jail on September 30, 2010. *Appellant's App.* at 38; *Appellant's Br.* at 3.

persons incarcerated in other jurisdictions. *Sweeney*, 704 N.E.2d at 96. The IAD process begins when the state bringing the charges against a defendant, who is in custody in another IAD jurisdiction, files a detainer.[3] *State v. Robinson*, 863 N.E.2d 894, 896 (Ind.Ct.App.2007), *trans. denied* (2007). After a detainer is filed, the inmate/defendant may file a request for final disposition, which triggers the requirement under the IAD that he be brought to trial within 180 days. *Id.; see also Conn*, 831 N.E.2d at 830–31. There is no mandate obligating the State to file a detainer. *Fisher v. State*, 933 N.E.2d 526, 529 (Ind. Ct.App.2010). Absent the filing of a detainer under the IAD, the IAD is not applicable. *Sweeney*, 704 N.E.2d at 98. Because the State did not file a detainer in this case, we find the IAD does not apply to McCloud's case.

Turning to the other method of securing the presence of a prisoner in Indiana who is being held in another jurisdiction, the writ of habeas corpus ad prosequendum ("Writ"), Indiana Code section 35–33–10–5, provides that Indiana courts have authority to issue a Writ in order to secure the presence of prisoners for criminal prosecution. It has origins dating back to the first Judiciary Act, 1 Stat. 81, section 14 (1798). *Sweeney*, 704 N.E.2d at 96. Essentially, a Writ is a written request for temporary custody of a prisoner. The United States Supreme Court identified three main differences between detainers and Writs.

First, a Writ may only be issued by a court, whereas a detainer may be lodged against a prisoner either upon the initiative of a prosecutor or law enforcement officer. Second, a Writ requires the immediate presence of the prisoner but a detainer merely notifies prison authorities that the prisoner is wanted in another jurisdiction upon release to face pending criminal charges. If a detainer is lodged, the receiving state must take further action in order to obtain temporary custody over the prisoner. Finally, because a Writ requires immediate action, it is valid only for a short period of time. On the other hand, a detainer may remain lodged against the prisoner for a lengthy period of time, even for the span of the prisoner's sentence.

*Sweeney*, 704 N.E.2d at 97 (citing *United States v. Mauro*, 436 U.S. 340, 358, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)) (internal citations omitted). While Indiana Code section 35–33–10–5 gives Indiana courts the "authority" to issue Writs to secure prisoners for trial in this state, it does not require them to do so. Because no Writ was issued in this case, we find it, like the IAD, is inapplicable to our resolution of this case. Therefore, we now turn to the issues presented, namely whether the trial court erred when it denied McCloud's motion to dismiss pending charges, either because of the time limits of Criminal Rule 4(C) or pursuant to constitutional protections.

### A. Criminal Rule 4

 McCloud argues that the trial court should have granted his motion to dismiss pursuant to Criminal Rule 4(C), which provides in relevant part:

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant

---

3. "A detainer is 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdic-

tion.'" *Webb v. State*, 437 N.E.2d 1330, 1331 (Ind.1982) (quoting *United States v. Mauro*, 436 U.S. 340, 359, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978)).

is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar[.] ... Any defendant so held shall, on motion, be discharged.

Thus, under Criminal Rule 4(C), a defendant may seek and be granted a discharge if he is not brought to trial within the proper time period. However, the purpose of Criminal Rule 4(C) is to create early trials and not to discharge defendants. *Feuston v. State*, 953 N.E.2d 545, 551 (Ind. Ct.App.2011). The rule places an affirmative duty on the State to bring a defendant to trial within one year of being charged or arrested, but allows for extensions of that time for various reasons. *Blasko v. State*, 920 N.E.2d 790, 792 (Ind.Ct.App.2010), *trans. denied.* For instance, " '[i]f a delay is caused by the defendant's own motion or action, the one-year time limit is extended accordingly.' " *Id.* at 793 (quoting *Frisbie v. State*, 687 N.E.2d 1215, 1217 (Ind.Ct. App.1997), *trans. denied* (1998)).

Before determining whether Criminal Rule 4(C) was violated, we must first determine whether the rule applies here at all; ultimately, we conclude that it does. We acknowledge that our colleagues have stated that Criminal Rule 4 " 'does not apply when a person is incarcerated in a foreign jurisdiction.' " *Fisher*, 933 N.E.2d at 529 (quoting *Howard v. State*, 755 N.E.2d 242, 245 (Ind.Ct.App.2001)). However, in *Sweeney*, our Supreme Court explained that the *Howard* court relied, in part, on *Heflin v. State*, 275 Ind. 197, 416 N.E.2d 121, 124 (Ind.1981), where the IAD was applicable (and thus Criminal Rule 4 was not) because a detainer had been lodged by Indiana authorities on a defendant who was in federal prison. The *Sweeney* Court explained that in *Heflin*, "[T]he IAD was applicable ... because a detainer had been lodged and *not simply because the defendant was in a foreign jurisdiction.*" *Sweeney*, 704 N.E.2d at 100 (emphasis added). It also clarified that

[w]here the legislature has prescribed an alternate set of time deadlines as part of a broader statutory scheme as it has done in the IAD, we properly subordinate Criminal Rule 4 thereto.

*Id.* In *Sweeney*, where no detainer was filed and the IAD did not apply, the defendant was entitled to the protections of Criminal Rule 4, and the Court proceeded to determine whether the defendant's Criminal Rule 4 rights were violated.[4] We will do likewise here and evaluate McCloud's situation under Criminal Rule 4(C).[5]

Here, McCloud was arrested on October 15, 2009 and charged the next day. McCloud asserts that under Criminal Rule 4(C) he should have been brought to trial within one year, by October 16, 2010. The question we consider is whether McCloud's federal incarceration outside the State of Indiana for approximately ten months, from December 2009 to September or October 2010, tolled the Criminal Rule 4 clock and thereby extended the date by which the State was required to prosecute McCloud. We conclude that it did.

---

4. We recognize that in *Sweeney* the defendant was brought into Indiana on a writ; however, we do not believe that the writ was significant or determinative of the Court's decision that Sweeney was entitled to Criminal Rule 4 protections.

5. We respectfully decline to follow *Fisher* to the limited extent that it stands for the proposition that Criminal Rule 4 has no application to a defendant who is incarcerated in a foreign jurisdiction. 933 N.E.2d at 529.

McCloud was not in Indiana for almost ten months, and not within Indiana's exclusive control, during this time. The reason for McCloud's absence was his federal incarceration stemming from the violation of probation for a prior handgun offense. We have held, "[I]f a delay is caused by the defendant's .... action, the one-year time limit is extended accordingly." *Blasko*, 920 N.E.2d at 792. As the trial court observed, "[W]hy [should] the ten months that he's been in federal custody and unavailable ... be counted against the State for that one (1) year period?" *Tr.* at 31. Like the trial court, we decline to attribute that time period of McCloud's incarceration to the State for purposes of the Criminal Rule 4 timeline.

McCloud suggests that the time he spent in federal prison is chargeable to the State because McCloud was back in Indiana within the one-year time period, appearing in court on the warrant hearing on October 13, just days before the one-year deadline of October 16, 2010. He asserts that he was ready, willing, and able to be tried at any time in the week leading up to the October 16 deadline, and therefore, the issue of whether Criminal Rule 4 was tolled is "moot." *Appellant's App.* at 50 (Defendant's Brief in Support of Motion to Dismiss). That is, McCloud claims that because he was released and available before the one-year deadline expired, "there's nothing to toll." *Tr.* at 32. We disagree. The fact that McCloud was back and present in state custody before one year from being charged does not affect the fact that he was absent for approximately ten months. McCloud's incarceration in federal prison outside of Indiana was a delay caused by him, and we will not assign that time to the State for purposes of the Criminal Rule 4(C) calculation.

McCloud also argues that the State was put on notice of his federal incarceration, not in October 2010, when he appeared for the warrant surrender hearing, but months earlier in March 2010, when the surety agent filed the "Petition to Release Surety," in which it requested that the court release its liability on the bond and, in so doing, indicated McCloud was in federal custody. Therefore, McCloud asserts, he should have been brought to trial on or before November 30, 2010. *Appellant's Br.* at 14. The State maintains that it did not know of McCloud's whereabouts, only knowing that he failed to appear for trial. That said, the State does not dispute that the surety agent filed the "Petition to Release Surety" in March 2010; rather, the State's argument seems to be that the third-party filing was insufficient to put the State on actual notice of McCloud's whereabouts, and, moreover, was in fact incorrect, stating that McCloud was in Oklahoma when he was not. Under the circumstances of this case, we agree with the State that the surety agent's "Petition to Release Surety" was not adequate notice to the State and did not restart the running of the Criminal Rule 4 clock. The petition was a request filed by a third party asking the trial court for relief on its bond liability; it was not a clear or direct notification to the State either by McCloud or his attorney that he was in federal prison, and even though the petition incidentally referenced McCloud being in federal incarceration, evidently in the wrong state, it did not suffice as formal notice to the State.[6]

6. In *Werner v. State,* 818 N.E.2d 26 (Ind.Ct. App.2004), *trans. denied* (2005), where the defendant faced charges in one Indiana county when he was arrested and incarcerated in another, this court determined that phone calls on the defendant's behalf to court personnel of defendant's incarceration were not sufficient to constitute notice to the State of defendant's whereabouts because there was "simply no guarantee that a telephone mes-

In this case, McCloud was charged on October 16, 2009, and the trial court denied his motion to dismiss on January 7, 2011, a time period consisting of 448 days. We hold that the period from October 16, 2009 (the date McCloud was charged) to February 8, 2010 (when McCloud failed to appear for trial) is chargeable to the State (115 days). However, the period from February 8, 2010 until October 8, 2010, when he was released from federal custody and taken into state custody, is chargeable to McCloud.[7] Because the time McCloud spent outside of Indiana extended the time within which the State was required to bring McCloud to trial, the trial court did not err in denying McCloud's motion for dismissal of the pending charges because of an alleged violation of Criminal Rule 4(C).

### B. Constitutional Protections

■ We next turn to whether McCloud was deprived of his right to a speedy trial under the Indiana and United States Constitutions. The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution, and Article I, Section 12 of the Indiana Constitution. *Clark v. State,* 659 N.E.2d 548, 551 (Ind.1995). In reviewing whether a defendant has been denied a speedy trial, we apply the analysis established in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The *Barker* analysis requires the balancing of four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) any resulting prejudice to the defendant. *Sweeney,* 704 N.E.2d at 102 (citing *Barker,* 407 U.S. at 530, 92 S.Ct. 2182). The four factors "are related factors and must be considered together with such other circumstances as may be relevant." *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. The *Barker* analysis is triggered where the delay exceeds one year. *Danks v. State,* 733 N.E.2d 474, 481 (Ind. Ct.App.2000), *trans. denied.*

■ Addressing the *Barker* factors, we first examine the length of the delay. McCloud was charged on October 16, 2009. He failed to appear for trial in February 2010, and no one indicated that he was, at that point, in federal custody. On October 13, 2010, McCloud appeared at the warrant surrender hearing, and the matter was set for a pretrial conference approximately one month later, in November 2010, and set for trial in January 2011. From the filing of the charges in October 2009 until McCloud's January 2011 trial, when his motion to dismiss was denied, 448 days elapsed, "during which time [McCloud] was incarcerated in federal prison outside of Indiana for 'roughly ten months' or roughly 300 days." *Appellee's Br.* at 12. We do not find this timeline of events to constitute an extensive or significant delay in bringing McCloud to trial. *See Davis v. State,* 819 N.E.2d 91, 100 (Ind.Ct.App. 2004) (six-month delay was "relatively short"), *trans. denied* (2005); *compare Fisher,* 933 N.E.2d at 530–31 (court characterized delay as "undoubtedly long" where defendant had not yet been brought to trial eight years after his arrest and

---

sage ... would be communicated" to the court or other involved parties. *Id.* at 31. The *Werner* court held that "formal written notice" of the defendant's incarceration was required. *Id.* However, *Werner* did not address whether that written notice had to be filed by the defendant. We likewise do not determine whether the defendant must file the notice.

7. As we previously observed, at footnote 2, the record before us is not clear as to whether McCloud was released from federal custody and transferred to state custody on September 30, 2010 or on October 8, 2010.

over three years after he presented himself for prosecution).

We next consider the second prong of the *Barker* analysis, the reason for the delay and whether the State or the defendant is more to blame for the delay. Here, McCloud was in federal custody for approximately ten months. When he was arrested in December 2009 for the federal probation violation, McCloud knew that he was facing criminal charges in Indiana, yet he did not notify the State that he had been incarcerated on a federal probation violation, nor did his attorney (if, in fact, his attorney even knew about the federal incarceration, which is not clear from the record before us). McCloud did not appear for the February trial, yet he took no action to update or advise the State, either directly or otherwise, of his whereabouts. Under these circumstances, the delay in bringing him to trial was caused more by him than the State.

McCloud urges that the delay was caused by the State, not him, because "even when [he] was standing in state court on October 13, 2010, asking to proceed to trial, the State offered no explanation for its stated inability to proceed." *Appellant's Br.* at 18. The suggestion, apparently, is that once he appeared in court, the State should have been ready and available to try him within a few days, by October 15, 2010, even though for many months it did not know where he was located. Given the recognized calendar of our trial courts and prosecutors, McCloud's position is both unrealistic and unpersuasive. As said, we find that the delay in bringing McCloud to trial was caused more, if not entirely, by McCloud and not the State.

With regard to the third *Barker* factor, namely if or when the defendant asserted the speedy trial right, the record before us reflects that McCloud promptly asserted his right to a speedy trial on October 19,

2009, three days after he was charged. McCloud appeared for trial in November 2009, and objected to the State's request for a continuance, which the trial court granted, resetting the trial to February 2010. Upon appearing at the October 13, 2010 warrant surrender hearing, McCloud again asserted his right to a speedy trial and objected to the trial court setting a pretrial hearing in November 2010. In January 2011, prior to the start of trial, he filed his written motion to dismiss for failure to timely bring him to trial. Under these circumstances, we find that except for the period of his federal incarceration, McCloud consistently sought to bring this matter to trial.

■■■ Lastly, we assess the fourth prong to the *Barker* analysis, prejudice to the defendant. Prejudice is assessed in light of the three interests that the right to a speedy trial was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Sweeney,* 704 N.E.2d at 103 (citing *Barker,* 407 U.S. at 532, 92 S.Ct. 2182). " 'Indiana courts have placed the burden of demonstrating actual prejudice on the defendant to prove a speedy trial deprivation.' " *Sweeney,* 704 N.E.2d at 103 (quoting *Lee v. State,* 684 N.E.2d 1143, 1146 (Ind.1997)).

Here, McCloud does not assert that the delay in prosecution resulted in oppressive pretrial incarceration or created particularized anxiety and concern, nor does he argue that the delay prejudiced his ability to present his defense. Instead, McCloud asks us to hold that a showing of actual prejudice is not required, citing to *Hart v. State,* 292 N.E.2d 814, 815, 260 Ind. 137 (1973). *Appellant's Br.* at 19. We decline his request to dispense with the prejudice requirement, as more recent Indiana case law, including *Sweeney* decided by our Supreme Court in 1998, reflects that a show-

ing of actual prejudice is still required.[8] Here, McCloud has not offered any evidence of resulting prejudice from the delay in bringing him to trial.

Although it weighs in McCloud's favor that, while in Indiana, he consistently and repeatedly sought to bring his case to trial, the length of the delay was not excessive, the cause of the delay was due to McCloud's own act, his federal incarceration, which he did not take any affirmative steps to disclose to the State, and he has not shown or even alleged any prejudice because of the delay. We find that, on balance, the *Barker* factors indicate McCloud's federal and state constitutional rights to a speedy trial were not violated. Accordingly, the trial court did not err by denying his motion to dismiss the charges pending against him because of an alleged constitutional violation.

Affirmed.

BAKER, J., and BROWN, J., concur.

---

8. *But see Fisher,* 933 N.E.2d at 533 (finding it not necessary to address whether defendant demonstrated actual prejudice where other three *Barker* factors weighed in favor of defendant and against State). That situation is not before us in this case.