# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| EDDIE SPALDING, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A04-1210-CR-534 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara J. Cook-Crawford
The Honorable Shatrese Flowers, Master Commissioner
Cause No. 49F19-1103-CM-15688

**August 9, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Eddie Spalding appeals the trial court's denial of his motion to dismiss and discharge. We affirm.

## Issue

Spalding raises one issue, which we restate as whether the trial court properly denied his motion to dismiss and discharge.

## Facts

On March 7, 2011, Spalding was arrested and charged with Class A misdemeanor operating while intoxicated, Class A misdemeanor resisting law enforcement, and Class B misdemeanor public intoxication. On March 10, 2011, Spalding was released on bond. On April 1, 2011, Spalding was held in the Marion County Jail on a United States Marshal Service ("USMS") hold. Although a hearing was scheduled for April 11, 2011, Spalding failed to appear. A re-arrest warrant was issued and served that same day. On April 12, 2011, Spalding appeared at a hearing and, according to jail records, was returned to the jail. On May 10, 2011, the State moved for a continuance of the June 30, 2011 trial date, which the trial court granted. On June 2, 2011, Spalding was released to the USMS.

A pretrial conference was held on June 30, 2011, at which Spalding failed to appear, and defense counsel informed the trial court that Spalding was apparently in federal custody but confirmation was needed. The trial was rescheduled for July 1, 2011, and Spalding again failed to appear.

On July 19, 2011, Spalding wrote a letter informing the trial court that he was in federal custody in Kentucky and awaiting transfer to a facility in Oklahoma. The trial court forwarded this letter to the State on July 25, 2011. On August 29, 2011, the State petitioned for a writ of habeas corpus ad prosequendum requesting that Spalding be transported for a September 28, 2011 hearing, which the trial court granted. Although the writ was issued, federal authorities did not transport Spalding to that hearing.

From October 21, 2011, through January 23, 2012, Spalding was incarcerated in the Marion County Jail on a federal hold. It is not clear from the record why Spalding was in the Marion County Jail during this time.

On March 13, 2012, Spalding filed a motion to dismiss and discharge alleging that 372 days had passed since his arrest and that all of the delay was attributable to the State. At a March 14, 2012 hearing, defense counsel informed the trial court that Spalding was still in federal custody awaiting the adjudication of an alleged probation violation. On March 28, 2012, another hearing was held, and the trial court ruled that the delays from July 1, 2011, through July 25, 2011, September 28, 2011, through October 21, 2011, and March 13, 2012, through March 28, 2012, were attributable to Spalding. The trial court informed the parties, "from the date defense filed the motion, March 13th of this year to today and any further proceedings will be charged to the defense." Tr. p. 27. That same day, the trial court granted defense counsel's request to certify the issue for interlocutory appeal.

On April 26, 2012, Spalding informed the trial court of his intent not to file an appeal at that time and requested that a bench trial be set before June 4, 2012.[1] At an April 30, 2012 hearing, defense counsel informed the trial court that Spalding was in a federal facility in Illinois. Defense counsel objected to a proposed trial date of June 7, 2012, and requested that trial be set before June 4, 2012. A trial was scheduled for May 31, 2012.

Spalding was not transported to the May 31, 2012 trial, and defense counsel stated that Spalding was still in federal custody and that his earliest release date was "[e]arly 2013." Id. at 41. The trial court indicated that Spalding would not be transported until he had executed his sentence. Defense counsel voiced his concerns about Spalding's right to a speedy trial and stated that he believed the Indiana Criminal Rule 4 date had already passed and that, even based on the trial court's calculations, the deadline would be June 5, 2012. Defense counsel objected to setting a trial date beyond that. The trial court set a status hearing for November 1, 2012.

On June 18, 2012, Spalding filed another motion to dismiss and discharge arguing that, based on the trial court's March 28, 2012 calculations, 370 days of delay were attributable to the State. On August 23, 2012, after a hearing, the trial court denied the motion. On September 27, 2012, Spalding belatedly requested the certification of the order for interlocutory appeal, which the trial court granted. We accepted jurisdiction, and Spalding now appeals.

---

[1] That same day, Spalding filed a petition for writ of habeas corpus ad testificandum and transport order. Although it is not clear whether a writ was issued, he was not transported to the May 31, 2012 trial.

**Analysis**

Spalding argues that the trial court improperly denied his motion to dismiss and discharge because the time limit for trying him has passed. This issue is a question of law, which we review de novo. See Pelley v. State, 901 N.E.2d 494, 498 (Ind. 2009).

Spalding contends that, of the 470 days from the date he was charged until the date he filed his second motion to dismiss and discharge, only seventy-five days were attributable to him. According to Spalding, the State failed to timely bring him to trial in violation of Indiana Criminal Rule 4(C), which provides:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

The State responds by arguing, "because Defendant was in a foreign jurisdiction for several months following his arrest and the filing of charges against him in Indiana, Criminal Rule 4(C) does not apply to those time periods when he was outside the jurisdiction." Appellee's Br. p. 9. Effectively, however, the State asks us to apply

5

Criminal Rule 4(C) and attribute the time Spalding was incarcerated out of state to him. According to the State, when considering the time Spalding was in federal custody outside of Indiana, only 181 days are attributable to the Criminal Rule 4(C) time limit and, therefore, the motion to dismiss and discharge was properly denied.

When a defendant is incarcerated in another jurisdiction, there are two methods for securing his or her presence in Indiana—the Interstate Agreement on Detainers ("IAD"), codified at Indiana Code Section 35-33-10-4, and a writ of habeas corpus ad prosequendum ("writ"), codified at Indiana Code Section 35-33-10-5. See Sweeney v. State, 704 N.E.2d 86, 95 (Ind. 1998), cert. denied. "The decision of whether to use a detainer or a Writ to obtain custody of a prisoner only arises when the prisoner is confined in a federal prison; Writs are not available with respect to prisoners incarcerated or confined in other states." Id. at 97. There is no statutory mandate obligating the State to file a detainer within a set time frame and, absent the filing of a detainer, the provisions of the IAD are not triggered. Fisher v. State, 933 N.E.2d 526, 529-30 (Ind. Ct. App. 2010). Here, the State did not file a detainer. Thus, the IAD and its provisions for discharge do not apply. This does not necessarily mean, however, that Criminal Rule 4 does apply.

Our supreme court has observed:

> While it may be reasonable to impose the time limit of Criminal Rule 4(B) when a criminal defendant is within the exclusive control of the State of Indiana, for purposes of certainty and ease of administration of the rule, it becomes irrational to extend its application to a defendant who is incarcerated in another jurisdiction which has an interest in

6

retaining the defendant in its custody, either for trial or to serve a sentence.

Smith v. State, 267 Ind. 167, 171, 368 N.E.2d 1154, 1156 (1977) (restating a three-factor test for determining whether, upon demand, the State has satisfied its constitutional duty to make a diligent, good-faith effort to bring a defendant incarcerated out of state to trial). In other words, "Indiana has long held that Criminal Rule 4 does not apply when a person is incarcerated in a foreign jurisdiction." Howard v. State, 755 N.E.2d 242, 245 (Ind. Ct. App. 2001); see also Fisher, 933 N.E.2d at 529 (relying on Howard to conclude that Criminal Rule 4 did not provide a basis for Fisher's discharge). Our supreme court has clarified, "the inapplicability of Criminal Rule 4 to defendants in foreign jurisdictions should not extend to defendants who are brought into Indiana under Writs or other forms of temporary custody." Sweeney, 704 N.E.2d at 100.

In Howard, the defendant was arrested in Indiana on September 2, 1998, and formal charges were filed on September 9, 1998. We observed that, for purposes of Criminal Rule 4, the clock began to tick on September 9, 1998. Id. at 246. On September 15, 1998, at Howard's initial hearing, defense counsel informed the State that Howard was incarcerated in Kentucky. Relying on Smith, we concluded, "At this point, Howard was not in the exclusive control of the State of Indiana. As a result, we find that Criminal Rule 4 was inapplicable for Howard's period of incarceration in Kentucky." Id. We determined that the date of Howard's return to Indiana, September 3, 1999, was

7

significant because that was when Howard was again within Indiana's exclusive control so as to make Criminal Rule 4 applicable again.[2] Id.

In rejecting Howard's argument that Sweeney required the delay between his informing the State of his whereabouts in Kentucky and the State lodging the detainer be attributed to the State, we explained:

> Our supreme court merely carved out a very limited exception to the Smith line of cases in Sweeney, thereby leaving intact its earlier decisions in Smith, Heflin, and Brown. Specifically, our supreme court concluded that while generally Criminal Rule 4 will not apply to defendants incarcerated in foreign jurisdictions, it is proper to apply Criminal Rule 4 to such defendants in the single instance where the State brings a defendant into Indiana under a form of temporary custody, but then voluntarily relinquishes control of that defendant to a foreign jurisdiction. Sweeney, 704 N.E.2d at 100. Such was not the situation in Howard's case. Thus, we follow the Smith line of cases and affirm the trial court's decision to deny Howard's Motion for Discharge.

Id. 246-47.

Here, following Howard, the Criminal Rule 4(C) clock began to tick on March 7, 2011, when Spalding was arrested and charged, and Criminal Rule 4 became inapplicable in the Spring or Summer 2011.[3] Although the State subsequently attempted to secure

---

[2] Although the State had lodged a detainer against Howard, because Howard never requested a final disposition of those charges, we found that the 180-day period in which a defendant must be brought to trial under the IAD was never triggered. Howard, 755 N.E.2d at 246. Because the application of the IAD was not outcome determinative, it is not a basis for distinguishing Howard.

[3] It is arguable that Criminal Rule 4(C) no longer applied on April 1, 2011, when Spalding was in the Marion County Jail under a USMS hold, on June 2, 2011, when he was released to the USMS, on June 30, 2011, when defense counsel informed the trial court and the State that Spalding was apparently incarcerated out of state, or on July 25, 2011 when the State received written notice of Spalding's whereabouts. We decline to determine precisely when Criminal Rule 4(C) became inapplicable at this stage of the proceedings because, depending on what delays are attributable to Spalding after he is actually returned to Indiana's exclusive control and when he is actually tried, the difference between April

Spalding's presence in Indiana with a writ, he was not returned to Indiana pursuant to the writ.[4] Therefore, the Sweeney exception, which applied Criminal Rule 4 to defendants who are brought into Indiana under writs or other forms of temporary custody, was not triggered. See Sweeney, 704 N.E.2d at 100.

Further, although it appears that Spalding was in the Marion County Jail from October 21, 2011 through January 23, 2012, the record indicates that Spalding was there on a federal hold. The federal hold, taken with the State's assertion that there is no evidence that the State or trial court knew Spalding had been transported, leads us to conclude that Spalding was not in the jurisdiction under the exclusive control of Indiana during this time.[5] See id. at 100 n.27 (noting "that defendant's speedy trial rights in Indiana do not commence until he is within the jurisdiction and exclusive control of Indiana authorities."). Accordingly, when Spalding filed his second motion to dismiss and discharge, he had not yet been returned to the jurisdiction and under the exclusive control of the State of Indiana, and Criminal Rule 4(C) was still inapplicable.[6]

---

1, 2011, June 2, 2011, June 30, 2011, and July 25, 2011 may be of no significance for purposes of Criminal Rule 4(C).

[4] The Sweeney court noted that the United States Supreme Court has held that state courts lack jurisdiction to issue Writs to order the production, or otherwise interfere, with prisoners in federal custody and that the federal government may, based on principles of comity, honor state-issued writs. Sweeney, 704 N.E.2d at 97 n.19. The federal government is not obligated to honor such writs, however, and they were not honored here.

[5] Even if Spalding was in the jurisdiction under the exclusive control of Indiana when he was released on bond and in the Marion County Jail under the federal holds (March 7, 2011, to June 2, 2011, and October 21, 2011, to January 23, 2012) and Criminal Rule 4 applied during those times, that only amounts to 181 days of the one-year period.

[6] Because of our holding that Criminal Rule 4 did not apply, we need not determine whether the time that he was in federal custody was a delay attributable to him as the State asserts.

Spalding urges us to follow McCloud v. State, 959 N.E.2d 879, 884 (Ind. Ct. App. 2011), trans. denied, which applied Criminal Rule 4(C) to a defendant who, after being arrested in Indiana, was incarcerated in a federal facility in Oklahoma for ten months before being returned to Indiana. In doing so, the McCloud court relied on Sweeney for the proposition that "where no detainer was filed and the IAD did not apply, the defendant was entitled to the protections of Criminal Rule 4 . . . ." McCloud, 959 N.E.2d at 884. The McCloud court recognized that Sweeney was brought into Indiana on a writ and noted, "we do not believe that the writ was significant or determinative of the Court's decision that Sweeney was entitled to Criminal Rule 4 protections." Id. at 884 n.4.

We do not agree with McCloud's reading of Sweeney. In Sweeney, the court addressed the State's argument that, even though no detainer had been lodged, the IAD, not Criminal Rule 4(C), applied because the defendant was incarcerated in a foreign jurisdiction when the present charges were filed. Sweeney, 704 N.E.2d at 99. Sweeney clarified prior holdings and observed that the IAD is applicable for purposes of a speedy trial because a detainer has been lodged and not simply because the defendant is in a foreign jurisdiction. Id. at 100. The Sweeney court further explained:

> Heflin stated that "it is irrational to extend the application of Criminal Rule 4(B) to a defendant who is incarcerated in another jurisdiction." [Heflin v. State, 275 Ind. 197, 201, 416 N.E.2d 121, 124 (1981)] (citing Smith v. State, 267 Ind. 167, 368 N.E.2d 1154 (1977)). However, the inapplicability of Criminal Rule 4 to defendants in foreign jurisdictions should not extend to defendants who are brought into Indiana under Writs or other forms of temporary custody. This court has determined that defendants in Indiana criminal prosecutions have certain speedy trial rights which we have embodied in Criminal Rule 4. Where the legislature has

prescribed an alternate set of time deadlines as part of a broader statutory scheme as it has done in the IAD, we properly subordinate Criminal Rule 4 thereto. But where the state elects not to invoke the IAD for purposes of securing a defendant's presence at trial, it cannot invoke selectively provisions of the IAD that it finds to its liking. Defendant here is entitled to the protections of Criminal Rule 4.

Id. (emphasis added).

We take from Sweeney that, if the State does not lodge a detainer, the IAD does not apply and the State cannot selectively invoke certain provisions of it. Further, if a defendant is brought into Indiana under a writ or other form of temporary custody, Criminal Rule 4 applies. As we read Sweeney, if a defendant who is incarcerated in another jurisdiction is not brought into Indiana's exclusive control, Criminal Rule 4 does not apply even when the State does not lodge a detainer. To the extent McCloud reads Sweeney to hold that Criminal Rule 4 applies whenever the IAD does not, we respectfully disagree.

Even when the IAD and Criminal Rule 4 do not apply, a defendant is not without recourse—he or she may still raise a constitutional speedy trial argument. See Fisher, 933 N.E.2d at 530 (applying the four-part Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, (1972), test to determine whether constitutional right to a speedy trial was violated even though the IAD and Criminal Rule 4 did not apply).[7] Spalding, however, does not make a Barker argument on appeal and, therefore, has not established that he was entitled to

---

[7] McCloud specifically declined to follow Fisher to the extent Fisher stands for the proposition that Criminal Rule 4 has no application to a defendant who is incarcerated in a foreign jurisdiction. McCloud, 959 N.E.2d at 884.

11

discharge under a constitutional analysis. Because Criminal Rule 4(C) did not apply while Spalding was not in the exclusive control of Indiana, he has not shown that the trial court erroneously denied his motion to dismiss and discharge.

## Conclusion

The trial court properly denied Spalding's motion to dismiss and discharge. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.

12